HENRY B. BRANT, Plaintiff in Error, *v.* SARAH B. BRANT, EXECUTRIX, AND LAWRASON LEVERING, EXEC'R OF JOSHUA B. BRANT, DEC'D, Defendants in Error.

1. *Wills — Legatees and Devisees — Marshalling Assets.* — The testator by his will directed his executors to pay off and discharge all his debts out of his estate as soon as could conveniently be done after his decease ; he then bequeathed and devised his estate by specific legacies and devises to his wife and his children in nearly equal parts. The executors, from the rents of the realty, paid off the debts. Upon a bill to marshal assets, *held,* that as the testator had designated no specific fund from which the debts were to be paid, it was his intention that the devisees and legatees should contribute ratably to the abatement of the encumbrance, and that the whole burden of the debts could not be thrown upon the personal estate.
2. *Wills — Dower — Devise — Election.* — A widow may always refuse to take under a will as a devisee or legatee, and may fall back on her claim for statutory dower, but she cannot claim under the will and under the statute at the same time ; she must make her election, and claim under the one and reject the other. The widow does not take under the will as a purchaser, so as to have the portion bequeathed and devised to her discharged from liability for payment of the debts of the testator, when the burden of the debts is imposed generally upon the whole of the estate.

*Error to St. Louis Court of Common Pleas.*

*Napton* with *T. T. Gantt,* for plaintiff in error.

I. The rule in England and Missouri is, that the personal estate while in the hands of the executor is the primary and natural fund which must be resorted to in the first instance for the payment of debts of every description contracted by the testator—Wms. on Ex'rs, 1149 ; Stokes v. O'Fallon, 2 Mo. 29.

Even in case of contingent liabilities, the executor is not justified in giving up the residue without bond from specific legatees to refund—Wms. on Ex'rs, 546, B 2, and especially note Q for American references ; R. C. 1855, Administration, p. 3, ch. 125, § 9 ; id. ch. 121, § 19, pp. 48–9 ; id. ch. 22, §§ 10, 47.

II. In order to exempt any of the personal estate from its primary liability for debts, there must appear from the whole will taken together an intention so expressed as to convince

a judicial mind, not merely to charge the real estate, but so to charge it as to exempt the personal—Booth v. Blundell, 1 Meriv. 193; Wms. on Ex'rs, 1450.

III. In the absence of any indication of intention in the will as to the fund from which his debts were to be paid, we insist that, 1st, the residuum of personalty must be exhausted; 2d, that the general pecuniary legacies must be exhausted; 3d, that the specific legacies must be exhausted (or, in any view, that they must contribute with the specific devisees ratably) ; and lastly, the devisees of land.

The rule was well settled in England up to 1844, that specific legacies had to be used for payment of debts in preference to devises of land which are also specific. Such was the fifth resolution laid down by Ld. Talbot in Barlewood v. Pope, 3 P. Wms. 322, and such was the express decision of Vice Ch. Shadwell in Cornwall v. Cornwall, 12 Sim. 298, of Ch. Kent in McKay v. Green, 3 Johns. Ch. 56, and Livingston v. Newkirk, 3 id. 312, and of Ch. Walworth in Rogers v. Rogers, 1 Pai. 188, and of all the courts of Error in the same case reported in 3 Wend. 503. Such was manifestly the opinion of Judge Story when he wrote his treatise on equity and discussed the doctrine of marshalling assets—1 Sto. Eq. §§ 565, 571, 573; Will. on Exec'rs, 382. And such seems to be the rule inferable from our statute—Administration Law, § 21, p. 509. On the other hand, Vice Ch. Sir K. Bruce in Tombs v. Roch, 2 Coll. 490, and another Vice Ch. (Shadwell), in Gervis v. Gervis, 14 Sim. 654, establish the rule that the specific legatees and devisees must contribute ratably—professing to follow Long v. Short, 1 P. Wms., and an *obiter dictum* of W. Sugden in Young v. Hazzard, 1 Jones & L. 465; though both of these cases were of devises or bequests of freehold and leasehold expressly subject to the payment of debts. See Jarm. on Wills, 547–8, note *b.*, where the law is stated to be as laid down in Clifton v. Burst, 1 P. Wms. 679, and in Ld. Talbot's 5th resolution, and the case of Long v. Short is said to be against all the old decisions.

IV. After all, the intent of the testator is the controlling

consideration in the interpretation of a will ; and it is insist-
ed, that as the testator left the mass of his personal estate
(nearly all) to his wife, and made her executrix, and as such
directed her to pay his debts, his intent was (knowing as he
did, or is presumed to know, that the personal estate was
the natural and primary fund for the payment of debts)
that they should be paid out of the personalty ; and in the
absence of any intent one way or the other, the above rules
in point 3 prevail.

V. The claim of the widow to hold all the personalty and
all the realty left her in the will, as a purchaser entirely ex-
empt from the payment of debts, is unfounded. 1. It is
against the manifest intent of the testator ; 2. It contravenes
the well established doctrine that one cannot claim under
and against a will. The statute presents three or four
choices to a widow, and the will affords another. She has
ample time for deliberate and intelligent selection. If she
takes the will and rejects the statutory offers, she occupies
the position of any other legatee or devisee, and must abide
by its general intent—Tipping v. Tipping, 1 P. Wms. 729 ;
O'Neal v. Meade, id. 603 ; Clifton v. Bunt, id. 670 ; Wms.
on Ex'rs, 647–8, and note ; Tynt v. Tynt, 2 P. Wms. 544,
and especially Mr. Coxe's note ; Burridge v. Budget, 1 P.
Wms. 127 ; Williamson v. Williamson, 6 Pai. 298 ; Swilson
v. Corbett, 3 Atk. 369 ; Ridout v. Plymouth, 2 Atk. 105 ;
see especially Pemberton v. Pemberton, 29 Mo. 412.

VI. The third position assumed by the executors in their
answer, that the residuum general legacies, specific legacies,
and specific devises, are all to contribute ratably to the pay-
ment of the debts, seems to be without any authority or any
principle to support it.

VII. The second position assumed in the answer is, that
the devised lands to the widow must be exempt from debts,
but that the devised lands to the children and the specific
legacies to one of them and the widow are to bear the bur-
den ratably. Our position is that she takes *in toto* under
the will, or *in toto* under the statute ; that she cannot put

one foot on the statute and one on the will—that she can not blow hot and blow cold. She has her election; but when that is made, we are no longer concerned with the statute if she has selected the will, or with the will if she has selected the statute.

*Glover & Shepley*, and *Hamilton*, for defendants in error.

I. It is not true even in England that personalty was the primary fund for the payment of debts, in case of deficiency of undevised assets, when real estate was not charged with such payment, for from the earliest times devises have been equally and ratably charged with specific legacies in the payment of specialty debts—(Ld. Cowper) Long v. Short, 1 P. Wms. 403, 470; Cases Temp. Talbot, 54; (Ch. J. Gibson) Loomis' Appeal, 10 Penn. 387; (Just. Lowry) Hallowell's Est., 23 Penn. 228; (V. Ch. Shadwell) Gervis v. Gervis, 14 Sim. 654; (V. Ch. Knight Bruce) Tombs v. Roch, 2 Coll. 489; (Sir Ed. Sugden) Young v. Hazzard, 1 Jones & L. 466; (V. Ch. Stuart) Eddels v. Johnson, 1 Giff. 29, 30.

II. As in this country land is assets for the payment of all sorts of debts, and as specialities stand on no better footing than simple contract debts, devises must share equally with specific legacies in the case of deficiency of assets for the payment of debts, and this is so when all parties stand in the condition of simple beneficiaries—Loomis' Appeal, 10 Penn. 387; Adams' Eq. (4th ed.) t. p. 493; Hallowell's Est., 23 Penn. 228.

It is sometimes rather difficult to appreciate the distinction, or the good sense of decisions, made upon the question of what are and what are not specific legacies. If a particular debt or chattel be bequeathed, it is termed a specific legacy; and if the chattel or debt should have in the lifetime of the testator been sold by him, or paid to him, then the legacy fails, and the legacy is said to be *addeemed*. But if a bequest is made of £1,000 in 3 per cent. consols, that is said to be a general legacy; so that if the testator had them at date of the will, and has sold them in his lifetime, his ex-

ecutor must make the legacy good by purchase of the stock, and the legacy is *not* addeemed.

What, then, are the specific legacies bequeathed to Mrs. Brant? They are, in the language of the will, 1st, "All my household furniture, my silver plate, my library, my horses, harness and carriages, and my pew (No. 51) in the 2d Presbyterian Church," &c. All authorities concur that articles thus described are specific legacies—2 Wms. on Ex'rs, 99 ; Ford v. Ford, 23 Foster (N. H.) 212 ; Manning v. Purcell, 2 Sm. & Gif. 284; Gilliatt v. Gilliatt, 28 Beav. 481. 2. "All money due me, in bank or banks, from any corporation or institution, or any individual." As there is no fund from which the money is to be taken, and as it is described as " money due me"—also, as it is described as being " money in bank or banks"—the legacy is specific—Cochran v. Cochran, 14 Sim. 248; Hayes v. Hayes, 1 Keen, 97 ; Ambler, 309 ; Duncan v. Duncan, 27 Beav. 386 ; Manning v. Purcell, 2 Sm. & Gif. 284; Ford v. Ford, 23 N. H. 212 ; McKidd v. Brown, 5 Grant Ch. & App. (U. Can.) 633. There could be no question as to whether if the testator had said " all money due me in the Bank of the State of Missouri," that it would have been specific. 3. "Twenty-five shares of stock in the St. Louis Cotton Factory, also twenty shares of stock in the Bank of the State of Missouri, also ten shares of stock in the St. Louis Insurance Company, also five shares of stock in the Southern Bank of St. Louis, also five shares of stock in the Bank of St. Louis." Standing alone, without any evidence of what stock the testator owned at the time of the maturing of the will in each of these corporations, there might be a question whether these were specific; but if we are able to show that in each case the stock bequeathed was all he had in the particular corporation at that time, then we make it specific, and evidence is admissible in such cases whether the legacy is general or specific—2 Wms. on Ex'rs, 1000; Att'y Gen'l v. Grote, 2 Russ. & My. 699 ; Boys v. Williams, id. 689 ; S. C. 3 Sim. 563 ; White v. Winchester, 6 Pick. 52, 56. But none of the cases which may be cited against us, cer-

Brant's Will.

tainly not in England; and when it is spoken of as shares or stock *in* a certain corporation, but only so many shares of stock *of* a corporation, it is insisted that the use of the word *in*, in connection with the specific number of shares, is equivalent to and means so many shares of stock standing in my name. 4. "All notes or credits, and also all debts, due and to become due to me, not herein otherwise disposed of in this my last will." This legacy is specific, as every test will show—Ford v. Ford, 23 N. H. 212, where the words were, "all notes of hand which are payable to me at the date of this codicil," were held to constitute a specific legacy—Measun v. Carleton, 30 Beav. 538. "The rest of my property in consols" is a specific legacy—Foxon v. Foxon, 10 Law T. (N. S.) 290. There was in this case no residuary bequest to any one.

III. But Mrs. Brant in accepting this provision in lieu of dower is not receiving a bounty, but takes as a purchaser, and the debts are to be paid out of the portions given to persons who are mere beneficiaries.

The law is the same where a general bequest is made by the testator to his wife in lieu of dower for her, election to accept a legacy, places her in the situation of a purchaser of what is given her by the will; so also in the case of devises as well as legacies—1 Hill Real Prop. 158, § 54; 2 Wms. on Ex'rs, 1169; 20 Gill & J. 113–14; 1 Bland, 203, Margaret Halle's case; Williamson v. Williamson, 6 Paige Ch. 305; Heath v. Dendy, 1 Russ. Ch. 543; Reed v. Reed, 9 Watts, 269; Lord v. Lord, 22 Conn. 595; S. C. 23 Conn. 327.

As by our law (§ 4 of law of Dower, R. C. 1855, p. 669) dower is given in personalty as well as in realty, if this proposition be true, the only question to decide is whether Mrs. Brant in accepting these provisions took them in lieu of dower.

1. As to the real estate devised to her by the will. This is beyond question, for the statute expressly says that it shall be taken to be in lieu of dower—R. C. 1855, p. 671, § 15. This disposes not only of the real estate devised to Mrs. Brant, but of the rents derived from it in any event.

2. As to the personalty devised by the will, it is evident by the terms of the will it is given her in lieu of her dower; and if that intention appear from the whole will taken together, it will be sufficient—Hamilton v. Beckwater, 2 Yates, 389 ; Herbert v. Wren et als., 7 Cranch, 370 ; Lord v. Lord, 23 Conn. 327 ; Pemberton v. Pemberton, 29 Mo. 412–13.

IV. But even in the case of pure beneficiaries our statute has materially changed the common law, and placed all legacies and devises upon a common ground, leaving the estate undisposed of by will to be the fund for the payment of debts, and until the three years have expired holding the incomes and profits of the estate, both personal and real, to make up the deficiency if any.

That the provisions of our administration law have entirely changed the relations existing between real and personal property in the application to the payment of debts is perfectly demonstrable from the following facts :

1. The provision in the statute concerning Administration provides (R. C. 1855, p. 146, § 27) " that any executor or administrator may file a petition praying that the personal estate may be reserved and the real estate sold for the payment of debts, and the Probate Court may thereupon order that the whole or any part of the personal property may be reserved, and the real estate or any part of it may be sold for payment of debts." Is there any absolute primary fund here? Is there any sacredness attaching to real estate ? How is this consistent with the idea that the heir is the absolute owner of the land, and its profits subject to be divested only when personal property of every kind is exhausted ?

2. The statute further provides (R. C. 1855, p. 136, § 45) that "the administrator or executor *shall* lease the real estate for any term not exceeding three years," and in the 46th section speaks of its being leased for the payment of debts.

V. But in the case of chattels and real estate bequeathed and devised by will, our law, though speaking generally of the duty of an executor as well as an administrator, *first*, to sell the personal property in payment of debts ; yet in secs. 47 and 48 of the statute relating to Wills (R. C. 1855, p. 574)

expressly provides that if any chattels or real estate given by will to any person shall be taken for the payment of debts, "then all the other legatees, devisees and heirs shall refund their proportional part of such loss to such person from whom the bequest shall be taken." It thus supplements the provisions of § 27, art. 3, of the Administration Act, and in this way makes good to any devisee of real estate any real estate that may have been sold under the provisions of that section for the payment of debts by contributions from the other devisees and legatees. So also it supplements another provision, which allows the real estate by order of the court to be turned over to the devisee before the administration is closed, by providing that if the debts should unexpectedly come, and the legatee's portion should be swallowed up or reduced, such devisee may be called upon to make contribution.

VI. The general intent of the will (irrespective of the question whether Mrs. Brant takes as purchaser, or whether by law legatees and devisees equally contribute to make up any deficiency upon failure of the undevised estate to pay the debts) is that the debts shall be paid out of the general estate of the testator.

There is no statute in England that the intention of the will shall govern, and yet there, in a case where there was only a general direction that the testator's debts, funeral and testamentary charges and expenses should be fully paid and satisfied, it was held that the language amounts to charge those debts and expenses on the real estate equally with the personalty—Irwin v. Ironmonger, 2 Russ. & My. 538; Leigh v. Warrington, 1 Brown's Par. Cas. 511. So in this country, in the case of Shreeve's Ex'rs v. Shreeve, 2 Stock. Ch. 390, where the direction was that the executors should pay off and discharge all the testator's debts, that these words charge his whole estate, both real and personal, with the payment of his debts.

So in the case of Tombs v. Roch, 2 Coll. 501, Vice Ch. Knight Bruce says, "In truth, I consider it to be perfectly

correct in principle to say," &c. As in England real estate was not charged with debts unless it clearly appeared such was the intention, similar words have been held to show that intention. See cases collected in 2 Jarm. on Wills (Perkins' ed.) 365–8.

WAGNER, Judge, delivered the opinion of the court.

This was a suit brought by the plaintiff, one of the devisees and son of Joshua B. Brant, deceased, against the defendants, as executors for an account of the rents of certain real estate devised to the plaintiff, and alleged to have been collected and received by the defendants. The petition, in substance, states that the testator Brant, by his last will and testament, divided his real estate into three parts nearly or quite equal to each other, one of which parts he devised to his widow, Sarah B. Brant, who was made executrix, and is also made a defendant in this suit; another to his daughter, Elizabeth Lovejoy McDowell, and the other to the plaintiff; each of said devises being for the life of the said parties respectively, with limitations over. That to the plaintiff, the testator bequeathed the certain stocks in several moneyed and other corporations; that to his daughter he gave no part of his personal estate; that he gave to his sister-in-law, Mary C. Benton, five hundred dollars, and to his niece, Lizzie Brant, also five hundred dollars. That all the rest *of his personal* and mixed property, embracing his household furniture, bank stock, &c., &c., he gave to his widow, Sarah B. Brant. That the testator did not charge any particular fund with the payment of his debts, but directed that his executors should pay the same out of his estate as soon as convenient after his decease. That the defendants duly qualified and took into their possession the entire estate, and from the time of the death of the testator up to April 1, 1864, received and took all the rents of the real estate, against the protest of the plaintiff, who always claimed that the debts of the testator were payable out of his personal estate. That all debts left by the deceased, and which had been allowed against the

Brant's Will.

estate, amounted to the sum of $42,772.55, and which were paid prior to the month of March, 1864. That there were no debts remaining unpaid, and no liabilities of a contingent nature to which the estate was liable, exceeding $10,000, and that the personal property and money which came to the hands of the defendants were more than sufficient to pay the debts left by the deceased, and all the legacies, except the bequests of the personal property to the said Sarah B. and the plaintiff. That the defendants have collected all the rents of the real estate, including that devised to the plaintiff, the latter amounting to about the sum of $45,000, that they had paid to him $12,204.15, and have in their hands $32,795.85 belonging to him, and prays that the defendants be ordered and adjudged to account to the plaintiff for the rents of the real estate devised to him, and that in said account the defendants be not allowed credit for any debts, for the payment of which the testator left sufficient personal assets.

The defendants in their answer admit that the deceased, by his will made the several dispositions, devises and bequests set forth in the petition. They state that all the debts thus far allowed against the estate had been paid, amounting to $67,172.42 ; and that there were contingent liabilities to the amount of $15,000. They deny that the personal property and money which came to their hands were more than sufficient to pay the debts, and state that the whole of the said property and money (even if the same were applicable to that purpose) was insufficient to pay the debts. They state that they are advised, and therefore they insist, that by the true construction of the said will, in case the personal estate not specifically bequeathed is insufficient to pay the debts, the amount necessary to complete such a payment must be contributed ratably by the specific legatees and devisees, other than the said Sarah B., or that under the proper construction of the said will and the law applicable to the case, the said Sarah B. can only be compelled to contribute ratably with the plaintiff and the said Elizabeth L. McDowell to the

payment of the debts.   They further insist that by accepting the provisions in the said will in her behalf the said Sarah B. became and was a purchaser for a valuable consideration of the estate and interest so acquired, and that as such she is entitled to have the assets of the estate so marshalled in her favor as to exempt the same from all liability by way of contribution or otherwise on account of debts.

The defendants also insisted that no final decree or judgment could be rendered between the parties in the cause until the administration was finally closed, and that if the plaintiff's petition contained any equity whatever it was that the respective devisees and legatees should be called upon to contribute their portion of whatever amount the share of the plaintiff's may have been made to pay on account of the debts of the testator, above what it was justly liable for.   On the trial before the court without a jury, the plaintiff gave evidence tending to prove that if the whole of the personal property had been first applied to the payment of the debts, the amount of the rents collected by the defendants from the real estate devised to the plaintiff was largely in excess of any deficiency which might remain after the application of said personal estate ; and also, that if the portion of the personal property not specifically bequeathed had been applied to the payment of the debts, then the rents so collected out of the real estate devised to the plaintiff would be in excess of what would be required from the share of the plaintiff in order to make up the deficiency.

The defendants on their part gave evidence tending to prove that the whole of the personal estate, if first applied to the debts, would have been insufficient to pay all the debts. The court dismissed the petition, and the plaintiff sued out his writ of error.

There was some doubt as to whether the court had jurisdiction over the matter before the close of the administration, and it is believed that it was for that reason that the petition was dismissed ; but, as the same subject is again pending,

and the parties are desirous of having the will construed, we will waive that point and examine the questions arising in the case.

It is insisted for the plaintiff that in the absence of a plain intention to the contrary, the rule is that the personal estate in the hands of the executor is the primary and natural fund, which must be resorted to in the first instance for the payment of debts of every description contracted by the testator, and that no intention appears in the will of the testator Brant to impair or militate against this rule.

On the other hand, it is contended: First, that Mrs. Brant does not stand in the attitude of a person receiving a devise or bequest as a bounty, but that she takes as a purchaser the devises and legacies, being substitutions in lieu of dower, and that her estate should be wholly exonerated in the payment of debts; and secondly, if she is not to be considered as a purchaser, the whole estate, that which is devised as well as bequeathed, must contribute ratably towards the payment of the debts left by deceased.

There is no part of the estate specifically charged with the payment of debts by the testator's will, the language being that all just debts and funeral expenses should be paid by the executors out of the estate as soon as convenient.

The preliminary question as to whether Mrs. Brant takes as a purchaser, so that the estate devised and bequeathed to her shall not be onerated with the burdens against the general estate, must be decided against her. The rights of the widow to dower are much favored by our law, and the statute enumerates certain articles which vest in her absolutely, fully discharged from all liability on account of the debts of the deceased husband, and without regard to the solvency or insolvency of the estate. The statute further makes express provision by which she is to receive a child's part, or in some instances a third of the property, at her election, but subject to the payment of debts.

A widow may always refuse to take under a will as devisee or legatee, and fall back on her claim for statutory dower,

but she cannot claim under the will and the statute at the same time; she must make her election, and claim under one and reject the other. She took the devises and legacies in this instance in lieu of dower, but subject to any abatement or contribution rendered necessary in the discharge or payment of debts. The testator devised and bequeathed his whole estate in three nearly equal parts. If any difference was made it was in favor of the widow, and from the whole disposition we cannot discover any intent to exonerate her in preference to the other devisees and legatees.

But the next and principal point is, should the personal property be all exhausted before the land devised is subjected to payment? It is undoubtedly true that the general rule has always been understood to be, that the personal estate is the natural and primary fund for the payment of debts, and this will be first applied until exhausted, unless an intention appears, or is to be gathered from the will, that they are to be paid in a different way. The subject of marshalling assets in the administration of the estates of deceased persons has been very extensively discussed by both the elementary writers and the courts, and received a profound and thorough consideration by that great master of equity law Chancellor Kent, in Livingston v. Newkirk, 3 Johns. Ch. 312, and where he arrived at the conclusion that the general and natural order of marshalling assets for the payment of debts, is: 1st, the personal estate; 2d, lands descended; 3d, lands devised.

Notwithstanding, it is very clear that a testator may, if he sees fit, give the personal estate as against his heir or any other real representative, discharged of the payment of his debts and legacies; and in such case, the rules of exoneration in favor of the heir or devisee altogether fail of application. And here a most important question arises, what mode or manner of expression in the testamentary disposition will be sufficient to contravene the general rule of law, and destroy the immunity usually accorded to the realty. Cases of this kind can never arise except where it is shown .

Brant's Will.

that the intent of the testator is in some manner about to be disappointed, and the matter then resolves itself into one of interpretation, the great aim being to learn from the will and all the surrounding circumstances the testator's preferences among his devisees and legatees, so as to apply that intention in fixing the measure of abatement and contribution. In the earlier cases it was laid down that express words were necessary to create an exemption of the personal property, but this has been greatly relaxed and modified by subsequent decisions, and it may now be taken as the established law, that the personal fund will be exempted if the intention of the testator in its favor can be collected from a sound interpretation put upon the whole will. It is only necessary that, from the whole testamentary disposition taken together, there should appear on the part of the testator an intention so expressed as to convince a *judicial* mind that it was meant to charge the real estate so as to exempt the personal, or to make them both abate and contribute ratably—2 Wms. on Ex'rs, 1450.

It is quite impossible to declare any general rule which can operate as a guide upon this question, as the construction of every will in which the point arises must depend mainly upon the individual circumstances of the particular case—*Ibid.* Lord Eldon makes the following observations in Booth v. Blundell, 1 Meriv. 219: "On a comparison of all the cases which have arisen, it is scarcely possible to find any two in which the court altogether agrees with itself, there being scarcely a single circumstance that is considered in one case as a ground of influence in favor of the intention, but it is considered in other cases as against the same inference, and I can find no rule deducible from all that has been said on the subject but this (which appears to be a rule supported by all the cases taken together), namely, that since it has been laid down that express words are not necessary to exempt the personal estate, there must be in the will that which is some times denominated 'evident demonstration,' sometimes 'plain intention,' and 'necessary implication,' to operate that intention."

The rule that specific devises was considered as intended to be preferred over specific legacies was derived from England, where, as is well known, land is not regarded as general assets for the payment of debts. But this rule never applied to specialty debts, because land was liable for them, and therefore as to them devises and specific legacies ratably contributed—Long v. Short, 1 P. Williams, 403 ; Tipping v. Tipping, id. 730 ; cases Temp. Talb. 54. With us land is assets for all sorts of debts, no distinction being made between simple contract debts and debts by specialty ; and although the personal estate is the primary fund for their payment, yet as between the devisees and legatees the same reason does not exist for preferring devises over legacies.

And this is the law in England, where several distinct properties, subject to a common charge, are disposed of among several persons, recourse is had, by the principle of justice, to the doctrine of contribution. Jarman, therefore, says, that if the testator, after commencing his will with a general direction that his debts should be paid, proceeds to dispose specifically of his real and personal estate among different persons, as the charge would affect the whole property so given, real as well as personal, the devisees and legatees must bear their respective shares of the burden *pro rata*—2 Jarm. on Wills, 549 ; Irwin v. Ironmonger, 2 Russ. & My. 534. And whatever views may have been entertained and announced by learned judges at different times, the above doctrine seems now to be settled by the more recent decisions, and certainly strongly recommends itself to favor by its intrinsic equity and justice—Young v. Hazzard, 1 Jones & L. 466 ; Tombs v. Roch, 2 Coll. 489 ; Gervis v. Gervis, 14 Sim. 654 ; Hallowell's Estate, 23 Penn. 223 ; Shreeve v. Shreeve, 2 Stock. Ch. 391.

In this case, as before observed, the testator commences his will with a general direction to his executors to pay off and discharge all his debts as soon as can conveniently be done after his decease ; his whole estate was liable for his debts, and as it was all disposed of by devise and bequest, and as no specific fund was designated and set apart for the

payment of debts, the natural presumption is that he intended that the devisees and legatees should contribute ratably to their abatement.

If a man dies intestate owing debts, payment will be made in the regular order pointed out by the statute, commencing with the personalty; but if he devises and bequeaths his whole property specifically, both real and personal, it is an indication that the objects or recipients of his bounty shall have the estate in the proportions designated in the will. Where, therefore, the testator makes various specific gifts of movable and immovable property, and large amounts of debts resulting from contingent liability perhaps, which were unexpected and not contemplated by him at the time of his decease, are proved up against the estate, will it be believed or considered that it was intended by him, that that part of the property which consisted wholly of the realty should be entirely indemnified from his debts by the rest? Or, in other words, that the law should step in and make a distinction where he had made none, and where he had made equal provision for all, and each and every specific devisee and legatee, it should be held that one set of beneficiaries should hold their estate intact, whilst another set should be thrown upon the world destitute and beggared? Yet, the enforcement of the rule, pressed in the argument for the plaintiff, would lead precisely to this result.

The just and equitable manner of construing the will, is to give it such an application as, in the arrangement for the payment of debts, the plan of the testator in the distribution of the property shall fairly be carried out, and no disappointment shall happen to those who appear to have been equally the subjects of his bounty and affection. Of course, this opinion as to the true construction of the will must be considered as applying to the specific devises and legacies, and not to any residuary clauses that may be contained in the instrument.

Let the judgment be affirmed. The other judges concur.