# Maybury *et al. v.* Grady *et al.*

*Bill by Executors for Construction of Will and to charge Testators' Debts on Real Estate Devised.*

1. *Legacies, general and demonstrative; what are.*— General legacies are those which are payable out of the general assets, and abate in case of a general deficiency; demonstrative legacies are bequests of specified sums of money with the superadded direction to pay out of a particular fund, but if the fund fail, such legacies are payable out of the general assets not specifically bequeathed, or out of funds covered by residuary bequests.

2. *Specific legacies; what are.*— Where testator provided in his will that if a litigated claim should be decided in his favor, "one-half of the net proceeds realized therefrom should go to his wife, and from the other half, if it should amount to $25,000, the sum of $10,000 should be paid to Q. to complete the cathedral, and if said half should be less than $25,000, then out of the remainder, after taking two-fifths for the cathedral, $2,000 each should be given to J. and S. and B. and M., and Mrs. M.," the remainder going to testator's daughter under other provisions of the will; and if the fund should not be sufficient to pay the special legacies in full, then they should be paid *pro rata;* the legacies given thereby are specific legacies as distinguished from general or demonstrative legacies.

3. *Residuary legatee; who is not.*—Where a testator, after having specifically disposed of his personal property, gave the "rest and residue of all his property" in trust to his executors, except certain contingent legacies, to manage and control for the benefit of his infant daughter until she reached the age of twenty-one years, when he directed them to deliver it over to her, there is an express devise to her of his real estate, and she does not take as a mere residuary legatee.

4. *Marshaling assets to pay debts as between specific legacies and specific devises.*—Where a testator devised his lands in terms which are in substance specific, and bequeathed his personal property in specific legacies, leaving an insufficiency of property not thus devised to pay his debts, and provided in his will: "After payment of all my just debts I give to A. one-half my 'entire personal property,' and the balance to my executors to hold in trust," &c.; providing, also, that one-third of the net income of his real estate should be given to his wife in lieu of dower, this personal property constitutes the primary fund for the payment of such debts, and the remaining debts unpaid

[Maybury et al. v. Grady et al.]

therefrom constitute a common and equal charge on the whole balance of the estate, excluding the one-third given to the wife in lieu of dower

5. *Charge of debts on personal property ; what words create.*—Where a testator provided in his will that "after the payment of all my just debts, &c., I give and bequeath one-half of my entire personal property to my wife A.," and makes no further disposition of that which might remain after the payment of debts, a special charge is created by these words on the personal property for the payment of the debts.

6. *"My estate"; meaning of these words in the will construed in this case.* Where testator gave one-half of his personal property to his wife, the remaining half of his personal property and all his real property to his executors, to be held by them in trust, to pay to his wife annually one-third of the net income and profits of the realty, if she accepted it in lieu of dower, and to take and hold all the rest of the property of every kind and nature, except the personal property given to his wife, and certain contingent legacies out of a litigated claim, to manage and control for the benefit of his daughter until she reached the age of twenty-one years, when all of said property should be delivered to her except the portion given to his wife and said contingent legacies, including all that remained of the contingent fund arising from said litigated claim; the executors retaining compensation therefrom, and further authorized the executors to appropriate money from "the estate" for the support and education of his daughter, and in a subsequent clause in the will directed that his executors might at their discretion expend money out of "my estate" to pay his funeral expenses, &c. ; the words "my estate" refer to that portion of his property given to his daughter, and the executors might, in their discretion, defray the funeral expenses out of the income of the real estate, and the residue of the litigated claim which were given to the daughter.

7. *Sureties of executors on supersedeas bonds ; when may recover for payment of judgment made by them.*—The execution of a supersedeas bond on appeal to this court by the executors of an estate, creates no privity between the sureties thereon and the estate; and a payment by the sureties of the judgment on its affirmance gives them no right of action against the estate. They could only recover against the property devised or bequeathed by being subrogated to the rights which the executors could themselves enforce against the estate, and while such executors would, if they had otherwise properly disbursed all the personal estate, be entitled to proceed against specific legacies and devised land to have them marshaled, and themselves reimbursed, yet they must account for all assets realized and for all devastavits, and can only recover as for an original deficiency of assets and not for a deficiency caused by their want of diligence and prudence in the administration.

8. *Administration of estate may be remooved into chancery when trusts to be executed.*—Where there are trusts to be executed under the provisions of a will, which are to be continued for a term of years, and the estate is to be kept together, this is sufficient to authorize the removal of the administration into chancery at the instance of the executor.

APPEAL from the Chancery Court of Mobile.
Heard before Hon. H. AUSTILL.

This was a bill filed by appellants as executors of the will of D. O. Grady, deceased. The provisions of the will, so far as it is necessary to set them out, are as follows, viz : "3. After the payment of all my just debts and funeral expenses, &c., I give to my wife A. one-half my entire personal property. 4. I give to my wife A., in lieu of her right of dower, one-third of the net rents of my lands for and during her natural life, to be paid annually by my executors. 5. I

[Maybury et al. v. Grady et al.]

give all the rest and residue of the estate of which I may die seized and possessed, including real and personal property, to my executors in trust, to take possession of and hold all the real estate of which I may die seized and possessed, and hold and rent the same from time to time, and receive the rents, &c., therefor, pay taxes thereon, and keep the property insured at their discretion, and pay to my wife A. one-third of the net rent, &c., arising therefrom in lieu of her right of dower in the same, for her natural life : and to take and hold all the balance of my real estate of every kind, except the part of the personal property given to my wife, which my executors shall pay over to her, and except the contingent legacies hereafter given, and to hold said estate, both real and personal, and manage and control the same until my daughter Carrie shall reach the age of twenty-one years, when all of said property, except that portion given to my wife and said contingent legacies, shall be by my said executors delivered over to my said daughter, my executors retaining reasonable compensation for their trouble as such, &c.; or, if my daughter should die before she attains the age of twenty-one years without leaving any child surviving her, all of said estate shall be delivered to "the Catholic Male and Female Charitable Societies of Mobile," but if she die before attaining the age of twenty-one years leaving a child, or children, then said property to be delivered to said child or children, share and share alike. 6. It is my will and desire that if my cotton claim which is now pending in the Court of Claims at Washington, should be decided in my favor and any sum should be hereafter realized therefrom, that one-half of the net proceeds thereof shall be paid to my beloved wife. Then, from the other half of the net proceeds—provided the said half shall amount to the sum of $25,000—it is my will and desire that the sum of $10,000 shall be paid to the Rt. Rev., the Catholic Bishop of Mobile, at the time being—in trust—to be by him expended in completing the Cathedral of Mobile ; but should one-half of the net proceeds amount to a less sum than $25,000, then it is my desire that two-fifths of said half shall be paid to and expended by the said Bishop as aforesaid. And if there should be any recovery of said cotton claim as aforesaid, it is my will and desire that after paying one-half of the net proceeds thereof to my said wife and the special legacy last above mentioned, the sum of $2,000 shall be paid to each of the following persons, to-wit : To my brothers, John Grady and Simon Grady, to my sister Bridget Eagan, to Margaret Cogan and Mrs. Maxwell, of the residue of the half of said net proceeds ; but if said residue shall not

be sufficient to pay each of said special legacies, then, it is my will and desire that they should be paid *pro rata* out of said residue. 7. My executors shall, from time to time, appropriate money out of the estate at their discretion for the support, education, and maintenance of my daughter Carrie." This clause then appoints the executors, viz : Rt. Rev. John Quinlan, Bishop of Mobile, and his successors in office, J. T. Maybury, Charles Cavaroc and M. J. Brennan, guardians of his daughter. " 8. It is my will and desire that all my real estate shall be kept together, and no portion thereof sold or alienated, either by my said executors or by my daughter, Carrie Grady, or by the 'contingent legatees' into whose possession it may come in the event of my daughter's death before she reaches the age of twenty-one years. 9. In case there is any surplus from the net annual revenue from the realty, after disbursing the moneys given in the will, then my said executors shall put by the said surplus as a contingent fund, to be applied by them at any time, if necessary, to the liquidation of any debts which may be incurred by my estate which the current net revenue may be insufficient to extinguish ; and in case the one-third of the net amount of the annual rents, issues and profits arising from my estate shall, in the opinion of my said executors, be at any time insufficient for the support and maintenance of my beloved wife, then my said executors are hereby authorized to appropriate from said contingent fund, if any there be, moneys at their discretion for her support. 10. It is my will and desire that my said executors shall have full power and authority to expend money out of my estate at their discretion to pay for my burial expenses, and to build a tomb and monument over my grave, if they think proper."

The bill sets out these provisions of the will, and avers that the personal property of the estate did not equal the debts proven against it by some $8,000 ; that the executors had paid the debts of the estate, except one debt of about $5,000 ; built the tomb and monument over the grave of the testator, paid the funeral expenses, and for about three years after the death of testator, had supported the widow and the daughter out of the income of the property ; that there was a recovery on the cotton claim mentioned in the 6th item of the will ; that the executors were advised that the amount thus recovered was a fund specifically bequeathed for the payment of certain legacies mentioned in the will ; that the true construction of the will was that this fund did not constitute a part of the general assets of the estate, and that it was their duty to pay the same to the specific lega-

tees, and that they had accordingly done so; that there re-
mained outstanding a debt of about $5,000, which they were
not in funds to pay; that they derived a large income from
the realty for some time after the testator's death, but from
circumstances beyond their control, and from shrinkage in
the value of the property, the income had decreased so much
from year to year, until, at the time of the filing of the bill,
it was wholly insufficient to pay the taxes and insurance on
the property and keep it in repair; that they were for this
reason unable to support the testator's daughter and execute
the trusts of the will.

The bill prays that the estate may be removed into the
Court of Chancery and there administered; that the will may
be construed, and that the court will instruct the complain-
ants as to the execution of the trusts imposed on them by its
provisions; that the real estate be charged with the payment
of the debts, and a sale thereof be authorized to pay the
debts and support the testator's daughter. Testator's widow,
his infant daughter, "The Catholic Male and Female Char-
itable Society of Mobile," and the persons holding the debt
against the estate, viz: McGill and McDonnell, were made
parties defendant to the bill. From the answer of McGill
and McDonnell, it appears that Leach, Forwood and Harri-
son recovered a judgment against appellants as executors of
the estate of D. O. Grady, who then appealed to the Su-
preme Court and gave a supersedeas bond in the usual form,
which was signed by said McGill and McDonnell as sureties.
The judgment was affirmed by the Supreme Court, and the
sureties paid the amount, being about $5,200. Carrie Grady,
by her guardian *ad litem*, demurred to so much of the bill as
sought to charge the real estate left by the testator with the
payment of debts, because it appeared by the bill that there
was not, and had not been, any deficiency of personal assets,
and the testator did not charge his realty with the payment
of debts. The Chancellor sustained the demurrer and dis-
missed the bill, and his decree is assigned as error.

ANDERSON & BOND, and HENRY ST. PAUL, for appellants.
The whole property of a decedent is charged with the pay-
ment of his debts.—Code, § 2429. Lands may be sold by ex-
ecutors to pay debts, if the personal property is insufficient.
Code, § 2447. If the executor, who is the proper party to do
so, can not proceed with the matter in the Probate Court, he
may invoke the aid of a court of equity, which will examine
the trusts of the will, and mould the proceedings so as to
save the rights of creditors, and yet disturb as little as pos-

[Maybury et al. v, Grady et al.]

sible the testator's distribution of his property. The court should charge the unpaid debts on the lands, unless the proceeds of the cotton claim are taken as part of the personal assets, and the whole tenor of the will shows that the specific legacies were not chargeable with the debts. It was regarded as a distinct fund, all of which was intended to be, and was, absorbed in their payment. The general rule for marshaling assets is : 1. The personal estate, excepting specific bequests, or such of it as is exempted from the payment of debts. 2. The real estate which is appropriated in the will as a fund for their payment. 3. The descended estate, whether the testator was seized of it when the will was made, or acquired it afterwards. 4. The rents and profits of it, received by the heir after the testator's death—and 5. The lands specifically devised, although they may be generally charged with the payment of debts, but not specially appropriated for that purpose. And this rule is executed by a decree in chancery, according to the rights of the parties respectively interested.—Adams' Equity, 263 ; *Hays v. Jackson,* 5 Mass. 151 ; *Donne v. Lewis,* 2 Brown's Cas. in Chy. 257 ; *Davis v. Topp,* 2 Brown's Cas. in Chy. 259

The disposition made by the testator of the cotton money is in specific legacies, to be paid only out of that particular fund, and was a specific disposition of that fund.—*Myers v. Myers,* 33 Ala. 87; *Lightfoot v. Lightfoot,* 27 Ala. 351 ; *Carter v. Balfour,* 19 Ala. 814 ; *Pearson v. Darrington,* 18 Ala. 348. A bequest of money to be recovered in a particular suit is a specific bequest.—11 G. & J. 185 ; *Stout v. Hart,* 7 N. J. L.; *Wallace v. Wallace,* 23 N. H. 149. The devise made in the 5th item of the will is strictly of a residuary character, and, as the land would have descended to the daughter without any reference to the will, the executors only performed the duties of guardians. Land descended is liable to pay debts before assets specifically bequeathed, and it must be first sold before specific legacies can be called in.—*Carter v. Balfour, supra ; Hays v. Jackson,* 5 Mass. 151 ; 3 P. Wms. 353 ; *Harris v. Ingelow, Ib.* 96 ; *Chase v. Lockerman,* 11 G. & J. 185 ; 3 Paige 402 ; 2 Dev. Eq. 173 ; Adams' Eq. 263. Even ordinary legacies are chargeable on lands, which pass under a general residuary clause, because the "residue" must mean what remains after satisfying previous express gifts.—*Lewis v. Darling,* 16 How. 1 ; 2 Binn. 525 ; 6 *Ib.* 395 ; 1 Pa. St. 96 ; 23 N. H. 149.

R. P. DESHON, for appellee, (No brief on file),

STONE, J.—The argument pressed upon us by appellants rests mainly on the assumption that Grady, by his will, specifically disposed of the fund to be realized on the cotton claim, while the disposition of his lands for his daughter rests on a clause which is, in its nature, residuary. We can not assent to this interpretation. There can be no question that the bequest, contingent on the success of the cotton claim referred to, is specific, so far as it proposes to give of that fund to his wife, to the completion of the cathedral, and the pecuniary legacies to his brothers and sisters. These legacies are made to depend expressly on the successful issue of that claim, and are payable only out of the money thereon to be realized. If that suit was unsuccessful, the legacies failed. There are specific legacies, in contradistinction to general pecuniary legacies, which are payable out of general assets, and are to be abated in case of a general deficiency; and, to demonstrative legacies, which are bequests of specified sums of money, with superadded direction to pay them out of a particular fund. In the latter case, if the designated fund fail, the legacy will be payable out of the general assets not specifically bequeathed, or, out of the fund covered by residuary bequests. In this case, if the fund failed, the legacies were never to take effect.—*Lightfoot v. Lightfoot,* 27 Ala. 351; *Myers v. Myers,* 33 Ala. 85; 2 Lomax on Ex'rs. (33) 69, *et seq ;* 1 Rop. on Leg. 201, *et seq : Ib.* 191; *Wallace v. Wallace,* 23 N. H. 149.

We hold, also, that there is an express devise of the real estate to testator's daughter, and that she does not take as a mere residuary legatee would take.— *Wallace v. Wallace, supra*; Lead. Ca. in Eq. Vol. 2, pt. 1, 323 *et seq.*

In addition to the legal intendment, Mr. Grady's will makes the payment of his debts a special charge on his personal property. Its language is: "After the payment of all my just debts and funeral charges and expenses, I give and bequeath unto my beloved wife, Agnes M. Grady, one-half of my entire personal property," &c. With the exception of the cotton claim, then of contingent value, the will makes no disposition of the personal property and effects, save of that which should remain after the payment of testator's debts. The will then specially devises and bequeaths to his wife and daughter, his entire real estate, and the residuum of the personalty, except the cotton claim. Testator, then, in specific legacies, gave to his wife, of the fund to be realized on the cotton claim, one-half—and of the residue he made such disposition to his brothers and sisters, and towards the completion of the cathedral, in Mobile, as that the collective be-

quests from this fund amounted to forty-five thousand dollars. The bill fails to show the amount realized on the cotton claim, but contents itself with the following general averment: "Your orators show unto your honor that said cotton claim was finally decided in favor of said executors, and that your orators as executors complied with the terms and directions of said will as to the disposition of said fund, as specifically and specially directed by the testator, and thereby said fund was exhausted, and none of it now remains in their hands." This averment is objectionably general and indefinite. The bequests out of this fund, as we have shown, are specific, and they are to be paid out of the net proceeds of the cotton claim. If the net proceeds amount to fifty thousand dollars, then one-half, $25,000, to Mrs. Grady, $10,000 to the cathedral, and $10,000 to the brothers and sisters, will aggregate forty-five thousand dollars—and this leaves five thousand dollars for the daughter. If the net sum realized exceeded fifty thousand dollars, then the residue for the daughter would be increased.

In the 9th item of the will is this clause: "And in case the one-third of the net amount of the annual rents, issues and profits arising from my estate shall, in the opinion of my said executors, be at any time insufficient for the support and maintenance of my said beloved wife, then my said executors are hereby authorized to appropriate from said contingent fund, if any there be, moneys at their discretion for her support." Possibly the surplus, if any, of the cotton claim, was expended in this way. The construction placed on the will by the executors and their counsel would have justified such expenditure, and would authorize the averment in the bill, that the money realized on the cotton claim, was disposed of "as specifically and specially directed by the testator." The bill should have set forth, with particularity, the sum realized on the cotton claim, and how it was expended. This, for reasons to be hereafter shown.

Many provisions in the will of Mr. Grady furnish unmistakable evidence that he considered his personal estate, independent of the cotton claim, amply sufficient to pay his debts, and leave a surplus. He bequeathed one-half of his personal property, after the payment of his debts, to his wife, and the other half to his daughter. He gave to his executors power and authority to expend money out of his estate at their discretion, to pay his burial expenses, and to build a tomb and monument over his grave. The question will doubtless arise, and should be decided, what did the testator mean by the words, "my estate," in the 10th item of

his will. It is from this source he directs his executors, at their discretion, to pay for his burial, and for a tomb and monument. In the fifth item, testator bequeathes and devises to his executors the remaining half of his personal estate, and all his real estate, in trust, first, to pay to his wife annually one-third of the net rents of the realty, " provided she receive the same in lieu of her dower in and to said lands and premises." He then adds : " and to take and hold all the balance of my estate of any and every kind or nature whatsoever," except the half of his personal property given to his wife, and except the contingent legacies out of the cotton claim, " to hold said estate both real and personal, and manage and control the same, until my beloved daughter, Carrie Grady, shall reach the age of twenty-one years, when all said property as aforesaid, except that portion devised to my beloved wife, and the contingent legacies hereinafter named, together with all that shall remain of the contingent fund hereinafter named, shall be, by my said executors, delivered over to my said daughter, Carrie Grady—my said executors retaining, from year to year, reasonable and proper sums of money, as compensation for their trouble and expense as such executors." In the 7th item is this language : "It is my will and desire that my said executors shall, from time to time, appropriate moneys out of the estate, at their discretion, for the support, maintenance and education of my said daughter, Carrie M. Grady." In the 8th item, testator speaks of all the lands as " my real estate." We think testator, by the terms " my estate," in the 10th item, intended to embrace the property, real and personal, given to his daughter, Carrie, for the following reasons : First, he had directed that part of his estate to be kept together, until Carrie reached the age of twenty-one, while, as to the residue of his estate, he gave no such direction. True, as to one-third of the rents and income of the lands so ordered to be kept together, the remark above does not apply, during the life of Mrs. Grady ; but this was given to her in lieu of dower, over which he could exercise no power of disposition, testamentary or otherwise. He had no power to fasten a charge on this interest, without the wife's consent, express or implied. In the second place, testator, by devise and specific bequest, had disposed of his entire property, real and personal, in such form as that all would soon pass from his executors, save that to be kept together for his daughter. Third, testator, as shown above, speaks of the provision made for his daughter, as " the estate," excluding therefrom the other legacies contained in the will. We hold, therefore,

that a discretion was given to the executors, to defray the expense of the burial, and to erect a suitable tomb and monument, out of the income of the real estate and the residue of the cotton money, which were given to the daughter.

We have shown that the devise of the real estate, and what we called the contingent legacies, are all in their nature specific. These comprise all of the estate, save what is in the 3d item of the will, called the "entire personal property." The bill avers there is now no personal property, and that at testator's death, the debts of the estate exceeded the value of said entire personal property, by some eight thousand dollars. One object of the bill is to fasten a charge on the lands devised to the daughter, for the alleged deficiency. The daughter is still an infant of immature years, and it is contended for her that the money bequests, product of the cotton claim, must be first exhausted, before lands devised can be made subject.

In this, as in most of the States composing the Union, lands as well as personal property are charged with the payment of decedent's debts. Such is the law of England now; but here, as well as there, in the absence of testamentary direction, personal property is the fund primarily chargeable with the payment of debts. In the multiform conditions in which estates are left, sometimes by the caprice, but more frequentiy by the oversight, if not ignorance of testators, the question of priority of liability between claimants under wills, in different right, has been many times before the courts. Some of the rules declared are so remarkable, and so clearly right, that we find no contrariety of opinion upon them. Upon others, courts of the highest character, and the same court at different times have differed. In *Livingston v. Newkirk*, 3 Johns Ch. 312, the question of primary liability arose between lands descended and lands devised. The opinion of the chancellor went no farther than the wants of the case. He consequently stated the order of marshaling to that extent only. He said : "The order of marshaling assets towards payment of debts, is to apply—1. The personal estate ; 2. Lands descended ; 3. Lands devised." In *Donne v. Lewis*, 2 Bro. C. C. 257, Lord Thurlow stated his idea of the order in which assets were to be applied to be—1. The general personal estate ; 2. Ordinarily speaking, estates devised for the payment of debts ; 3. Estates descended ; 4. Estates specifically devised, even though charged generally with the payment of debts. In 2 Lomax on Ex'rs. (255) 426, the rule is stated as follows : 1. Personal estate not specifically bequeathed, or exempted expressly, or by plain implication,

[Maybury et al. v. Grady et al.]

from the payment of debts ; 2. Lands expressly devised for, (not merely charged with), the payment of debts ; 3. Descended estates ; 4. Lands charged with the payment of debts. In Story Eq. Ju. § 577, the rule is stated substantially in the language of Lord Thurlow, and is confined to four classes. So Chancellor Kent adopts the same classification in his Commentaries, Vol. 4, marg. p. 421. In *Hays v. Jackson*, 6 Mass. 147, decided in 1809, Parsons, C. J., stated the rule in equity, for marshaling assets, to be settled as follows : "1. The personal estate, excepting specific bequests, or such of it as is exempted from the payment of debts ; 2. The real estate which is appropriated in the will as a fund for the payment ; 3. The descended estate, whether the testator was seized of it when the will was made, or it was afterwards acquired ; 4. The rents and profits of it, received by the heir after the testator's death ; 5. The lands specifically devised, although they may be generally charged with the payment of the debts, but not specially appropriated for that purpose." It will be observed that, although all the several statements above are in the main harmonious, neither of them covers the whole possible ground. Suppose the case of a devise of real estate, and a bequest of personal property, each expressly subject to the payment of debts, without direction or intimation as to which species of property shall be first made liable, and the debts exhaust only a part of such devised and bequeathed property. Shall the personal property be first taken, or shall the burden fall alike, and *pro rata*, upon each species of property ? Or, suppose the more common case, which we have shown is the case in hand, where the testator devises his lands, in terms which are in substance specific, and bequeathes his personal property in specific legacies, leaving an insufficiency of property, not thus devised and bequeathed, for the payment of his debts, are there any priorities of liabilitiy as between the real and personal property thus disposed of by the will ? These are possible categories, which are not provided for in any of the rules stated above. We confine what we have to say to the last of the supposed cases. We cannot arrive at the intention of the testator, for evidently he intended, alike and equally, that the devise and bequests should have full effect. As said by Justice Gibson in *Shaw v. McCameron*, 11 Serg. & R. 252, "It is probable the matter never was the subject of his thoughts, and we are compelled to look for an *intention* where none in fact exists." Manifestly Mr. Grady had the conviction that what he, in the third item of his will, designates as his "entire personal property," would pay his

debts and funeral expenses, and leave a surplus, which he bequeathed in equal parts to his wife and daughter. If he had not been so convinced, the care and skill with which his will is prepared, give assurance that he would have made other provision to meet the deficiency. The law, common and statute, makes the personal property the primary fund for the payment of debts, unless such personal property is disposed of in specific legacies, or the will expressly charges the debts on the realty in the first instance. Hence, when the will does not specifically bequeath the personalty, and does not charge the realty in exoneration of the personalty, the presumption arises that the testator intended the personalty should be first applied to the payment of his debts. All men are conclusively presumed to know the law, and testators are no exception to the rule. When, however, as is claimed in this case, the debts exceed the value of testator's entire property not disposed of by specific devises and bequests, no such presumption can arise. As said by Gibson, J., " the matter never was the subject of his thoughts." In this case, it never entered into testator's mind that his personal property mentioned in the third item, was not amply sufficient to pay his debts and funeral expenses, and, of consequence, he had no intention whatever as to the fund or source from which to provide for the balance of his debts. We can not suppose he intended to provide against an event, which, if he thought on the subject, appeared to him impossible. Prudent men may provide for events, within the range of possibility. It would be unsafe to travel beyond this, in search of an imaginary intention.

In 2 Jarman on Wills, Perkins' ed. (546–7), 391–2, the rule of marshaling assets for the payment of debts is thus stated: "1st. The general personal estate, not expressly or by implication exempted. 2nd. Lands expressly devised to pay debts, whether the inheritance, or a term carved out of it, be so limited. 3rd. Estates which descend to the heir, whether acquired before, or after the making of the will. 4th. Devised or bequeathed property, real or personal, which is charged with debts and those specifically disposed of, subject to such charge. 5th. General pecuniary legacies *pro rata*. 6th. Specific legacies *pro rata*. 7th. Real estate devised." It will be seen that in the 4th class, no discrimination is made between devised real property, and bequeathed personal property, while in the 6th and 7th classes, specific legacies are first made liable, before lands devised can be subjected. What are included in Mr. Jarman's 6th, and 7th classes, are alone involved in this suit; for we are dealing alone with devised

lands and specific legacies. There are many highly respectable authorities which uphold Mr. Jarman's distinction. Perhaps a majority of the older American cases point that way. The rule is so stated in *Hoover v. Hoover*, 5 Barr. 351, although it was *dictum*, so far as it affects this case. So, what Lee, J., said on this point in *Elliott v. Carter*, 9 Grat. 541, is *dictum*. The following authorities favor this view : *Rogers v. Rogers*, 1 Paige, 188 ; *Shreve v. Shreve*, 2 Stockt. Ch. 385 ; *Worley v. Worley*, 1 Bailey Eq. 397 ; *Cornwall v. Cornwall*, 12 Simons, 298.

Adams, in his work on Equity, (263) 590, groups the scale of liability for debts into six classes, his 6th being : "Personal and real estate specifically given, and not charged with debts." On page (265) 597, this author says : "In regard to assets of the fourth and sixth classes, where both personal and real estate are included, a question has arisen, whether the personal and real estate should contribute *pro rata*, or whether the personalty is first liable. It has been determined that in both cases there is a liability *pro rata*, and that accordingly if land be devised, and a testator die indebted by bond, a specific legatee may compel the devisee to contribute." This doctrine meets the approbation of Mr. Roper in his work on Legacies, vol. 1, p. 358, *et seq*. *Long v. Short*, 1 P. Wms. 403, is the leading authority on this question. It was decided by Cowper, Lord Chancellor, in 1717. The question was between a devisee of lands held in fee, the donee of a leasehold estate, held for a term of years, and the legatee of an annuity to be paid out of the leasehold estate. There was a deficiency of assets to pay the specialty debts, and the bill was filed by the executor, who was the heir, to marshal the assets, and to have it determined whether the said debts should be charged on the real or leasehold estate. The Lord Chancellor decreed : 1st. That a devise of a rent charge out of a term, is as much a specific devise, as if it had been of the term itself. 2nd. That the devise of a term for years is as much a specific devise, as a devise of lands in fee. Wherefore, each being equally specific devises, it would, in this case, be an equal disappointment of the testator's intent, to defeat either, by subjecting it to the testator's debts.   *   * So that, to prevent the disappointment of the testator's intent, the court thought it reasonable that the devisee of the fee simple estate, and the devisees of the lease and annuity, should each contribute to the debts by specialty, in proportion to the value of the respective premises.

*Tombs v. Roch*, 2 Coll. 490, came before that able equity lawyer, Sir Knight Bruce, Vice-Chancellor. In an argument

that is certainly able, we may say exhaustive, he ruled that in case of specific legatees and devisees, where there is a deficiency of other assets to pay debts, the two classes must contribute ratably. That opinion, in its clearness and force, is a model of judicial writing, and may be consulted with profit by any inquirer after truth. One expression we can not forbear to copy. He said : "I consider it to be perfectly correct in principle to say, that every will ought to be read as in effect embodying a declaration by the testator, that the payment of his debts shall be as far as possible so arranged, as not to disappoint any of the gifts made by it, unless the instrument discloses a different intention." In *Silk v. Prime*, 2 Coll. 509, after disposing of all assets on which a prior liability rested for the payment of debts, the court declared, in case the same shall prove insufficient, "such deficiency is to be made good out of the said testator's personal estate specifically bequeathed, and the real estate at Outnewton, devised by his will to Sarah Thompson, his mother, in fee ; and the said estates are to contribute in proportion to such deficiency."

*Young v. Hassard*, 1 Jones & LaTouche, 466, came before Sir Edward Sugden when he was Lord Chancellor. It was urged before him that *Cornwall v. Cornwall*, *supra*, had over-ruled *Long v. Short*. He said : "I confess I was surprised by the statement that *Long v. Short* had been overruled. I have always considered it as a binding authority ; have advised on the strength of it ; cited it, and seen it acted upon ; and I think it to be regretted, that that which has for so many years been considered as a settled rule of law, should be now disturbed. I have a very great respect for the learned judge [Sir Lancelot Shadwell, V-C.] by whom the case of *Cornwall v. Cornwall* was decided ; but I can not say that I have any doubt that *Long v. Short* is still a binding authority. The decision in that case depended on this, that, at law, all the funds were liable to the debt ; and the question was, what was the intention of the testator ? The devise of the lands and of the chattels real, and of the annuity, being specific, Lord Cowper referred to the statute of fraudulent devises, and said that that statute made real estate in the hands of the devisee, liable to the payment of the specialty debt ; and, therefore, finding that all the funds were liable—for this court does not pretend to make a fund liable to the payment of a demand, to which it was not liable before ; it never creates a liability, but only, by marshaling funds, prevents a creditor from disappointing the intention of the testator—and finding that it was the clear intention of the testator to give

the chattel interest to the legatee, just as he had given the real estate to the devisee, he was of opinion that they ought to hear the burden ratably; and that, in that manner, the intention of the testator would be effectuated.  *  *  I see nothing to impeach the decision in *Long v. Short*; and if I were now called on to decide the question, I should feel myself bound to support the authority of that case."

In Armstrong's appeal, Sharswood, J., said : "It was settled in England by *Long v. Short*, that specific devises of land and specific bequests of personalty, must abate ratably in case of a deficiency of assets for the payment of the bond debts of the testator, because both lands and chattels were liable in law for those debts ; and it was equally the intention of the testator, that the legatee should have the chattel, and the devisee the land.   In this State, where lands have always been assets for the payment of debts by simple contract, as well as by specialty, the rule is general—that whenever there is a deficiency of assets to pay both debts and legacies, specific devisees and specific legatees shall contribute proportionably."—63 Penn. St. 312 ; *Hollowell's Estate*, 23 Penn. St. 223 ; *Heusman v. Fryer*, 3 Ch. App. Cas. L. R. 420 ; *Brunt's Will*, 40 Mo. 266 ; *Chase v. Lookerman*, 11 Gill & Johns. 185 ; *Gervis v. Gervis*, 14 Sim. 654.   In Leading Ca. in Eq., vol. 2, part 1, (notes to *Aldrich v. Cooper*, 8 Ves. 308), beginning at page 323 of 4th Amer. ed., is a full discussion of this question.

There are cases in which testators blend or mix realty and personalty in the creation of a source or fund for the payment of debts and legacies, which are governed by their own peculiar circumstances.   They shed no direct light on the question we are discussing.—*Broughton v. James*, 1 Coll. 26 ; *Atty-Gen'l v. Southgate*, 12 Sim. 77 ; *Roberts v. Walker*, 1 Russ. & Myl. 752 ; *Hassanclever v. Tucker*, 2 Bin. 525 ; *Whitman v. Norton*, 6 Bin. 395 ; *Lewis v. Darling*, 16 How. U. S. 1.   There is nothing in *Carter v. Balfour*, 19 Ala. 814, opposed to the views expressed above.

We hold that after exhausting what testator, in the 3rd item, calls "my entire personal property," if there remained any portion of the debts of the estate unprovided for, such excess of debts is a common and equal charge upon the whole balance of the estate, real and personal, less the third of the land rents, given in lieu of dower, to Mrs. Grady during her lifetime.

We have shown heretofore what testator intended by the terms "my estate," in the 10th item of his will.   We think he meant to confer on his executors a discretion in the use of what he had given to his daughter, or rather its income, for

the purpose therein expressed, should the personal property prove insufficient for the purpose, after paying the debts. If this discretionary power was exercised, and any portion of the income of the lands devised to the daughter was so used, then such sum must be excluded from the computation, in marshaling. It gives to the daughter no right to contribution from the legatees. If, however, any portion of the income and rents derived from the lands devised to her, or, of the surplus of the cotton claim, which the will gives to her specifically—to-wit: one-tenth of any possible recovery—has been employed and consumed in the payment of testator's debts, to the extent of such use she is entitled to contribution from all the legatees *pro rata.*

The bill in the present case is filed by the executors, and seeks to charge the unpaid balance of the debts on the lands devised to the daughter. The averments are not definite enough to show the character of the debts, and the exact amount of the original deficiency. There is, also, a strong implication in the averments of the bill that part of the income of the real estate devised, and, perhaps, the daughter's share of the cotton money, have been used in the payment of debts, or, perhaps, in expenses of administration; and, in this way, the alleged original deficiency of eight thousand dollars has been reduced to about five thousand dollars. The bill should correctly set forth how this matter stands; for in taking the account, with a view to marshaling, the daughter will be entitled to a credit, for the sum of her rents and cotton money so used. It is no answer to this view, that the executors have paid the pecuniary legacies. They should have retained enough to meet all debts, certain and contingent ; and in the assertion of any claim to fasten the charge of the unpaid debts on the lands, they stand in no more favorable light than if the entire proceeds of the cotton claim remained in their hands. They paid it in their own wrong, and must abide the consequences, if they have no recourse over against the legatees. Our purpose in what we have said, is to declare that if any part of the income of the daughter's devised estate, or, of her share of the cotton money, has been expended in paying debts, or expenses of administration, such sums must be brought into the account in any process of marshaling, and she allowed a credit therefor.

The present bill, as we have seen, is by the executors ; and one of its purposes was to raise a fund with which to repay the sureties on a supersedeas bond, the moneys they had been required to pay on the affirmed judgment of Leach, Harrison

[Maybury et al. v. Grady et al.]

& Farwood, against the executors of Grady, 58 Ala. 339. Those sureties were the sureties, not of the estate of Grady, but of his executors. When they paid the money, they paid it for the executors, and not for the estate, between which and themselves, the execution of the bond created no privity. By the payment, a cause of action at law accrued to them, against the executors, to recover the money thus paid for them; but they acquired no right of action against the estate. If the executors themselves had paid the money, they would have been entitled to a credit therefor in their executorial accounts. If they had otherwise disbursed, according to law, all personal assets with which they were chargeable, the primary fund for the payment of debts, this would give them, the executors, the right to proceed against the specific legacies and devised lands, to have them marshaled, and themselves reimbursed. But, in such proceeding, they must account for all assets realized, and for all devastavits, and can only recover for the balance, as for an original deficiency of assets. A deficiency caused by their errors in distribution, or, by a want of diligence and prudence in administration, gives them no recourse against remaining assets.—*Pearson v. Darrington*, 11th head-note, 32 Ala. 227–249. So, there may be cases where sureties, who have paid money for executors, as charged in this case, would have recourse on the devised and bequeathed property for their reimbursement; but, in such case, the proceeding would be governed by the same rules, as would obtain in a similar suit by executors themselves. They could only claim to be subrogated to the rights which their principals, the executors, could enforce against the estate.—*VanDerveer v. Ware*, at present term.

According to the principles declared above, the bill in the present case is defective. This would secure an affirmance of the decree of the Chancellor, but for a question presently to be noticed, there being no motion or offer in the court below to amend the bill. The bill, however, prays a removal of the administration into the Chancery Court, and we think that prayer should have been granted. There are trusts to be executed which are of a very delicate nature, and the estate, being required to be kept together, and the trusts continued for a series of years, we hold that a sufficient excuse is shown by the executors, why the removal should be made at their instance.

Reversed and remanded.

Let the costs of appeal be divided equally between appellants and appellees.