# Kelly *v.* Richardson, Ex'r., &c.

# Richardson, Ex'r. *v.* Carroll.

# Carroll *v.* Richardson, Ex'r., &c.

*Bill in Equity to Remove Administration from the Probate to the Chancery Court, to Construe Will, and for final Settlement.*

1. *Will; codicil.*—Where the second clause of a will commences, "Second. After paying all my just debts" and gives to M. all the testator's personal property, except certain specified articles which it gives to H. and B., and a codicil to the will commences, "Additional to page 1, from second clause. Second. After paying all my just debts" gives to M. all the testator's property except a stock of merchandise, which it gives to C. the codicil will be given effect as a substitute for the second clause of the will and as a revocation of the legacies to H. and B.

2. *Same.*—An instrument executed by the testator, after making his will, which in consideration of kind services, and a nominal sum, receipt of which is thereby acknowledged, gives to K. certain real estate. reserving to the grantor the "use, occupation, enjoyment and control" thereof during his life, and reciting "then this conveyance to be delivered to" K., will operate as a codicil, if executed with the formalities requisite to a will.

3. *General legacy.*—A bequest of all testator's personality, with certain specific exceptions, is a general legacy.

4. *Same.*—A bequest of $500 in cash to each of certain persons is a general legacy.

5. *Specific legacy.*—Where one bequeaths all his personalty to one person. excepting a stock of merchandise, books, accounts, notes, store fixtures, and everything belonging in a certain store, which he gives to C., the bequest to C. is a specific legacy.

6. *Same; after-acquired property.*—All devises, whether by specific description or by residuary clauses, are specific, except in so far as they may include real estate acquired after the execution of the will, as to which the devises will be general, unless such after-acquired

[Kelly v. Richardson, Ex'r, &c.]

property is so described as to admit of its identification by the devisees.

7. *Same; liability for general indebtedness of estate.*—A bequest to a person, of a mercantile business, with a provision that the legatee shall assume all the liabilities thereof, is not relieved of liability for the general indebtedness of the estate, but as to that stands on the same footing as other special legacies.

8. *Payment of liabilities charged upon specific legacy.*—If the property included in a bequest of a mercantile businesss with a provision that the legatee shall assume the liabilities thereof, is not sufficient for the payment of all such liabilities, the balance will be paid in the same manner as the other indebtedness of the estate.

9. *Debts of estate; how paid from general and specific devises and legacies.*—General devises contribute ratably with general legacies to debts of the estate and expenses of administration, and. if they are exhausted before the debts are liquidated, then specific devises and specific legacies abate pro rata.

10. *Construction of will; case at bar.*—Where a bequest to K. of all of testator's personal property, except a stock of merchandise, books, accounts, notes, store fixtures, and everything in a certain store, which was given to C., was followed by a bequest of $500 in cash to each of certain persons, and the testator also devised all his real estate, the bequests to K. and C. excluded all money in the store and all money in hand, as otherwise there would be no fund from which to pay the pecuniary legacies.

11. *Pledge of distributees share in decedent's estate.*—Under an agreement by which C., a legatee. purchases the interest of K., another legatee, and agrees that the executor shall hold his interest in the estate in pledge for K. till he has paid K. and further agrees that the executor shall not pay or surrender to him any sum or property from the estate till K. is paid, the executor may, if at any time he has in his hands money going to C. out of the estate, and as incident merely to the administration, pay it to K., to the extent of C.'s debt to her, but he cannot convert property specifically devised to C. into money, for the purpose of paying C.'s debt to K.

12. *Contract of sale by legatee of interest in estate.*—A contract by which K. sells to C. all her interest as legatee and devisee will not embrace land described in an instrument supposed to be a deed from testator to K., but which was in reality a codicil devising the land to K.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed by J. C. Richardson, as the executor of J. T. Perry, deceased, against the persons to whom the said J. T. Perry, by his last will, bequeathed his personal property and devised his realty; and prayed that the administration of said estate be removed into the Chancery Court; that the will be construed, and that the executor be directed as to his administration of the said last will and testament.

There are three separate appeals from the decree of the chancellor. Sarah Elizabeth Kelly brings one appeal, J. C. Richardson as executor brings the other, and J. M. Carroll brings the other. Each one of the appellants, respectively,

assigns errors. Hermann Dohrmeier, without having appealed, also assigned errors.

The original bill was filed on December 9, 1887. The prayer of the bill is sufficiently stated in the opinion. The facts of the case, as shown by the original and amended bills, the answers thereto, and the testimony, are substantially as follows :

J. T. Perry died at Greenville, Alabama, on the 24 of June, 1887, leaving an estate consisting of real and personal property. No wife or child survived him. His next of kin are his sisters, M. I. Rothenhoffer, Mary Elizabeth Kelly, (also called Sarah Elizabeth Kelly) and Martha A. Fulmore. After his death, two instruments in writing were found : the one purporting to be his last will and testament, with a codicil thereto; and the other purporting to be a deed conveying certain realty to Sarah Elizabeth Kelly. This deed is not shown to have been delivered to Mrs. Kelly, nor to any one for her, during the life of Perry, nor by his authority. Mrs. Kelly claims, however, that the deed was handed to J. M. Carroll, by Perry, and that J. M. Carroll, after the death of Perry, gave it to her. Under this deed she entered into the possession of the property shortly after the death of Perry, and has since received the rents therefrom. Mrs. Kelly is insolvent. On the 27th of July, 1887, M. I. Rothenhoffer and J. M. Carroll, propounded the instrument which purports to be the said last will and testament, and the codicil thereto, in the Butler Probate Court, for probate and record, as the last will and testament of the said J. T. Perry, deceased. These instruments so propounded for probate and record are copied in the opinion.

On the 21st day of July, 1887, Sarah Elizabeth Kelly filed her grounds of contest to said will and codicil, in the Butler Probate Court. On the 27th of July, 1887, said Mrs. Kelly, and Mrs. Rothenhoffer, and J. M. Carroll, executed a contract in writing, by the terms of which Mrs. Kelly withdrew her contest of the said will and codicil, and Mrs. Rothenhoffer conveyed her pecuniary legacy of five hundred dollars to Mrs. Kelly; and Mrs. Kelly then conveyed the same to J. M. Carroll, and J. M. Carroll agreed to pay Mrs. Kelly $1,550.00 for her interest, rights, claims and property, in any and all property owned or held by J. T. Perry at the time of his death, or to which she was or might be entitled as the legatee, devisee or otherwise, of said Perry, and for the $500.00 legacy conveyed to her by Mrs. Rothenhoffer and her claims against Carroll, under section 3 of the will and codicil; and J. M. Carroll further agreed that

the executor should hold his entire property and interest in said estate in pledge for Mrs. Kelly until he had paid Mrs. Kelly the $1,550.00, and contracted that the executor should neither pay nor surrender to him any sum or property from the said estate until Mrs. Kelly was paid. After the execution of this contract, on the 28th day of July, 1887, the will and codicil were probated and recorded in the Butler Probate Court, and letters testamentary issued from said Probate Court, to said J. C. Richardson, authorizing him to take upon himself the execution of said will and codicil. Immediately upon said Richardson's appointment as said executor, Mrs. Kelly presented to him said contract which she had made with J. M. Carroll, and notified said Richardson that she would hold him liable if he failed to hold for her the property in pledge under the said contract, until her debt was paid by J. M. Carroll, which has yet never been paid. The property of the Perry estate was duly appraised, and appraisement and inventory delivered to Richardson.

Under an order of the Probate Court, said Richardson sold the stock of merchandise and some other personal property, so soon as valid claims had been presented to him equal to the value of the personal property belonging to the estate.

On the 15th of October, 1887, when said Richardson was commencing such sale of the personal property, in accordance with the mandate of the order of the Probate Court, there was served on him an original bill of complaint, filed by Mrs. Rothenhoffer, and the Dohrmeier devisees, against him (said Richardson) and J. M. Carroll, seeking among other things, to enjoin the sale then about to be made and to contest the codicil of the will, and to discover an alleged large amount of the assets of the Perry estate, alleged by the bill to be in the hands of J. M. Carroll. By consent of the complainants to said bill, said Richardson desisted from selling certain portions of the said personalty, and proceeded with the sale as to the balance.

On the 29th of October, 1887, J. M. Carroll also filed an original bill of complaint in the Butler Chancery Court against said Richardson to require him to turn over to him (Carroll) the property bequeathed to him (Carroll) by the alleged codicil, and the money arising therefrom, and for an account of damages for the sale of such property by said Richardson, as executor of Perry. The codicil was at that time being contested on and by the original bill, then pending, of Mrs. Rothenhoffer filed on the 15th of October, 1887, against J. M. Carroll, and said Richardson, as Perry's executor.

On the 23d of June, 1889, appellee, Martha A. Fulmore, one of the respondents to said Richardson's bill of complaint, filed an original bill in the Circuit Court of the United States for the Middle District of Alabama, against said Richardson, as the executor of J. T. Perry, and the legatees and devisees under the will and codicil, and also against the next of kin of said J. T. Perry, seeking by her said bill, (1) to contest, annul, and set aside the alleged will and codicil, and the probate thereof; (2) to have the estate of said J. T. Perry distributed under the Alabama statute of descent and distribution; (3) and for the removal of the estate of J. T. Perry into the Circuit Court of the United States, and there have said Richardson, in the Federal Court, to distribute said estate; and (4) for a final settlement of said estate in said Federal Court by said executor. This proceeding of Mrs. Fulmore, in the United States Circuit Court, was made known and pleaded in the court below by an amendment, or supplementary bill filed January 13th, 1890.

On the 5th of January, 1891, said Richardson in the court below, amended his original bill, to which he made all the original respondents parties. By that amendment it was shown that on the 13th of December, 1890, the said United States court decided said case adversely to the said Martha A. Fulmore, from which decision she has served notice on said Richardson of an appeal by her to the Supreme Court of the United States.

On January 14th, 1891, one J. R. Porterfield as guardian of some of the devisees, and the *guardian ad litem* of the others, who were minors, filed their petition addressed to the chancellor, and prayed to have turned over and delivered to them the immediate possession of the real property which was devised and bequeathed to them under and by the will and codicil of J. T. Perry, deceased. This petition was submitted to the chancellor together with the cause, and on January 30, 1891, the chancellor rendered a decretal order granting the relief prayed for in said petition of Porterfield and others, and directing that the respective devises be turned over to the devisees or their guardian, "subject to the further orders of this court without selling or encumbering the same." On the same day the chancellor rendered his final decree, which, so far as pertains to the issues involved in this appeal, was in the following language: "There is no doubt of the legal proposition that the debts must be paid. They must be paid out of the property not bequeathed, if there be any such. If there is no such property, then the debts must be paid out of the property given to the

[Kelly v. Richardson, Ex'r, &c ]

residuary legatee, or devisee. If there is no residuary legatee then they must be paid out of the general legacies. But if there are not general legacies, then the debts must be paid by contribution from the legatees whose legacies are specific. It is the duty of the executor to exhaust all other remedies, and resort to all other means, before he will devote a specific legacy to the payment of the debts. And when it becomes necessary to resort to the specific legacies, he must do so in such a way as to make the burden fall equally on all of the specific legacies proportionately and equally, if possible. If the executor is about to select the property of one of the specific legatees and appropriate it to the payment of debts, there is a remedy in this court.

"By reference to the will it is my construction that the bequest to Mahala I. Rothenhoffer of all his personal property, with the exception named, makes her a residuary legatee, and the personal property named therein is principally liable for the payment of the debts, except for the mercantile, the legacy to J. M. Carroll being primarily liable for the mercantile debts. The legacy to Henrietta Dohrmeier of the piano, and of the parlor set of furniture to Bessie Dohrmeier, are specific legacies, and can be required to contribute to the payment of debts, when a resort to residuary and general legacies are insufficient to pay the debts.

"He gives $500, to each of his sisters, to be paid in 12 months after his death. This is a general legacy, and can not be paid by any contribution of the specific legacies. It must be paid out of the residuary legacy, if there be no property which is not bequeathed to any person out of which to pay it. The devise of the two brick storehouses to J. M. Carroll is specific, and can be made to contribute to the payment of debts only in the event that there is not enough of the residuary legatees property to pay them. The bequest in the 4th paragraph of the will is a specific devise of realty to Fannie Belle Dohrmeier, and should be delivered to her without impairment, if there is any means to pay the debts without resort to specific devises. The same is true of the bequest to Henrietta Dohrmeier in the 5th paragraph of the will. The same is true of the bequest to Bessie Dohrmeier in the 6th paragraph of the will. The same is true of the bequest to Eva Dohrmeier in the 7th paragraph of the will. It is a very important question in this case whether the bequest to Hermann Perry Dohrmeier is a specific, or a residuary legacy or devise. If Mrs. Rothenhoffer is given a residuary legacy of personal property and Herman Perry Dohrmeier

[Kelly v. Richardson, Ex'r, &c.]

a residuary devise of lands, then resort must be had first to her legacy, and after exhausting that, then to the residuary devise of land to said Herman. I would fain conclude that the testator failed to make, as he intended, the legacy or devise to Herman a specific devise as he had made those of his sisters. I am inclined to the opinion that the testator intended to use the words 'All other real property of which I may die seized or possessed, or that I may be entitled to at the time of my death'; as only a short way to describe the property which he intended to bequeath to Herman. I do not think he intended to charge this devise to Herman with payment of debts any more than he did the devises to the other nephews and nieces. But very reluctantly I must conclude that the language used by the testator will not permit me to hold that the devise to Herman Perry Dohrmeier is specific. The codicil of the will makes a specific devise to J. M. Carroll of the mercantile business, charged with the payment of the mercantile debts. Whatever remains after the payment of the mercantile debts is a specific legacy to him. This legacy must contribute as all the other specific legacies to the payment of debts after the exhaustion of the residuary devises and legacies to them, and not before. It is my opinion that the $1500 found in the vault after the death of the testator are not embraced in the legacy to J. M. Carroll; but that it should go to the residuary legacy to Mrs. Dohrmeier [Rothenhoffer?] which is primarily subject to the payment of the debts.

This is different as to the $300, found in the safe in the store, which is a part of the mercantile business given to J. M. Carroll. After the exhaustion of the residuary legacy to Mrs. Rothenhoffer, and of the residuary devises to Herman Perry Dohrmeier, then all the specific legacies and devises of personalty and realty must contribute *pro tanto* to the payment of debts. Let the costs of this suit be paid by the executor out of such funds of the estate which are in his hands, and his receipt shall be a voucher on the settlement of the estate."

The remaining facts sufficiently appear in the opinion of the court.

J. C. RICHARDSON, for J. C. Richardson as Exr., &c.

STALLINGS & WILKINSON, for Sarah E. Kelly and H. P. Dohrmeier.

TOMPKINS & TROY, for J. M. Carroll.
VOL. C.

[Kelly v. Richardson, Ex'r, &c.]

McCLELLAN, J.—J. C. Richardson, as executor of the last will and testament of J. T. Perry, deceased, filed his bill in the Chancery Court of Butler county against Sarah E. Kelly, J. M. Carroll and others, the devisees and legatees thereunder, praying that the administration of the decedent's estate be removed from the Probate into the Chancery Court, and there managed, administered and settled; that the will of the deceased be interpreted and construed by the Chancery Court, and the rights, interests and duties of the executor, devisees and legatees thereunder be declared; that the duties and liabilities of the executor in respect of a certain contract made by and between said Carroll and said Kelly be determined; that a certain "pretended deed," signed by the testator shortly before his death and found in the hands of Carroll, purporting to convey a lot or parcel of land to said Kelley, be annulled and cancelled, or held to be a part of said will, &c. The bill also contained the general prayer for relief. There is some suggestion in the bill, made by a reference to the averments of another bill in a different case where the charge was directly advanced, that Carroll had wrongfully and fraudulently gotten possession of a large sum of money which Perry had at the time of his death; and upon this suggestion the present bill sought a recovery from Carroll of this alleged fund. Evidence was adduced in that connection, but no decree was entered on this part of the case, and no question connected with it is now presented for our consideration. The fact that some question is raised as to the validity of a codicil to the will is also stated in the bill, and the Chancery Court is asked to determine whether the codicil is valid or not; but this inquiry is not pursued beyond this suggestion and prayer, the will and codicil were duly probated and established in the Probate Court, no decree on the validity of either was passed by the Chancery Court, but that court treated and considered the will and codicil together as constituting the last testament of the deceased, and so we will consider them.

No objection is here urged to the decree of the chancellor in so far as it removed the administration of the estate from the Probate into the Chancery Court; the propriety of and necessity for that action appear to have been conceded by all parties on the hearing.

The questions of chief importance raised by this record bear upon the construction of the testator's will and codicil, and that these may be the more clearly presented, those instruments, omitting their formal parts, are here copied as

follows: "First, my will is that all my just debts and funeral expenses, including a monument over my grave, be paid out of my estate as soon after my death as convenient. Second, after paying all my just debts and funeral expenses as heretofore described, I give, devise and bequeath to my beloved sister Mahala I. Rothenhoffer all my personal property except my piano, which I give, devise and bequeath to my niece Henrietta Dohrmeier, and my parlor set of furniture including carpet and parlor pictures of every kind, that is in my parlors to my niece Bessie Dohrmeier. Third, I give, devise and bequeath five hundred dollars in cash to each of my sisters, Mahala I. Rothenhoffer, Martha I. Fulmore, and my sister-in law Georgiana V. Carroll, which shall be paid over to them by my executors within twelve months after my death or sooner if practicable.

## REAL ESTATE.

I give, devise and bequeath to my nephew, J. M. Carroll, my two brick stores and lots on the corner of Commerce and Bolling streets, each fronting 25 feet on Commerce street and running back 125 feet; but if he should die without issue, before the reversion or remainder shall come into his possession, then I give, devise and bequeath the same to my niece, Fannie Bell Dohrmeier, her heirs and assigns, forever. Fourth. I give, devise and bequeath to my niece, Fannie Bell Dohrmeier my hotel and lot known as the "Perry House" on the north side of Commerce street, fronting about 50 feet on Commerce street and running back 100 feet. Also, I give, devise and bequeath to my niece, Fannie Bell Dohrmeier, my two one-story brick stores and lots, west and adjoining the "Perry Hotel" and the L. & N. R. R. right of way. Fifth. I give, devise and bequeath to my niece, Henrietta Dohrmeier, my two brick store-houses and lots on the south side of Commerce street, described as follows, i. e.: The third and fourth stores from the corner of Commerce and Bolling streets and immediately east and adjoining the two stores that I have given to J. M. Carroll, fronting 20 feet on Commerce street and running back 125 feet each, one now occupied by Prof. J. P. Steele and the other by H. Potter. Sixth. I give, devise and bequeath to my niece, Bessie Dohrmeier, my two two-story brick stores on the south side of Commerce street, known as the Sol. Erlick dry goods store and Lichten & Co. drug stores, each fronting 20 feet on Commerce street and running back 100 feet, immediately east and adjoining the two stores that I have given to Henrietta

[Kelly v. Richardson, Ex'r, &c.]

Dohrmeier, they being the fifth and sixth stores from the corner of Commerce and Bolling streets. Seventh. I give, devise and bequeath to my niece, Eva Dohrmeier, my two one-story brick store-houses and lots on the north side of Commerce street, fronting 45 feet on Commerce street and running back 100 feet, immediately east and adjoining the hotel known as the "Perry House" and now occupied by J. C. Bryan as a billiard and drinking saloon. Eighth. I give, devise and bequeath to my nephew, Herman Perry Dohrmeier, all other property which I may die seized and possessed of or that I may be entitled to at the time of my death. And I hereby appoint my nephew, J. M. Carroll, Edward Crenshaw and J. C. Richardson to be the executors of this my last will and testament, and I hereby authorize them or the survivors of them to do all things necessary to carry out the terms of this will, and to avoid if possible the necessity of going into any of the courts to settle up this will. It is my wish, too, in case of disagreement between any of the parties to this will, that the same shall be settled by arbitration instead of going into chancery or any other court with it. The said executors, or such of them as act, shall give bond and security in the sum of ten thousand dollars for the faithful performance in carring out the terms and provisons of this will, said bond to be taken and approved by the probate judge of this county. To all of which I set my hand and seal this the 10th day of February, 1887."

(The Codicil.) "Codicil: Additional to page 1 from second clause. Second: After paying all my just debts and funeral expenses, as heretofore described, I give, devise and bequeath to my beloved sister, Mahala J. Rothenhofer, all my personal property excepting stock of merchandise, books, accounts, notes, store fixtures and every thing belonging in said store now occupied by me on corner of Commerce and Bolling streets, to my nephew, J. M. Carroll, who will assume all the liabilities of the store and continue the business as heretofore; and he would [will?] provide for the welfare of my beloved sister, Elizabeth Kelley, and my sister-in-law, Georgiana V. Carroll, as long as they live and will accept."

It is clear, we think, that this codicil was intended, not as an addendum merely to the second clause of the will, but as a revocation and expurgation of that clause in its entirety and the substitution of the new provisions in lieu of it. The codicil is stated to be "additional," not to clause second, but "to page 1 from [or commencing with] second clause." With this identification of the point in the original paper where the codicil is to be inserted in the reading of both as one
38

instrument, the body of the addition to page 1 is denominated "Second." There being only one clause in the codicil, this word could have been used only for the purpose of referring it to its proper place as clause second in the original will; and this idea finds further support in the fact that the language of the codicil down to the exception stated therein is precisely that of the original clause, down to the exception. The original clause, in other words, bequeathed all of the testator's personalty to Mrs. Rothenhofer, with certain exceptions in specie, to Henrietta and Bessie Dohrmeier, respectively. The codicil in identical terms bequeathed all of the personalty to Mrs. Rothenhofer, with certain specific and entirely different exceptions to J. M. Carroll. Each of the provisions in terms covers all of the testator's personal estate and disposes of it. It may well be that the testator, having determined upon the provision for Carroll, and seeing that thereby the value of his bequest to Mrs. Rothenhofer would be greatly lessened, had in mind to maintain the quantum of her legacy to the extent that could be done by striking out the exception originally embraced in the clause "second" and revoking the legacies thereunder given to the Dohrmeiers. Certain it is that these clauses cover the same field and to the same extent the personalty and all the personalty of the estate. Certain it is also that they are wholly inconsistent with each other as respects their several exceptions from the general bequests of all personalty and their specific legacies out of and embracing in each instance all the property excepted from the general bequest to Mrs. Rothenhofer. And, of course, the codicil must be upheld, the effect being a revocation of the specific legacies to Henrietta and Bessie Dohrmeier. The chancellor erred in his decree upon this matter.

There is another instrument brought to light in this case which, in our opinion, must, if and when probated as it may be, operate as a codicil to the will of J. T. Perry. We refer to the paper executed by the testator on June 21st, 1887, which is in the following language :

"State of Alabama, } Know all men by these presents, Butler County. } That I, John T. Perry, of the County and State aforesaid, for and in consideration of kind and valuable services rendered to me by Elizabeth Kelly of the county and State aforesaid, and also for the further consideration of $5.00 to me in hand paid, the receipt of which is hereby acknowledged, have given, granted, bargained and sold, and by these presents do give, grant, bargain, sell and convey unto the said Elizabeth Kelly the

following described lot or parcel of land, viz. :   One house and lot known as the Conley place, bounded on North by Commerce street, on the South by Geo. W. Bryan's lot, on the East by an alley; on the West by Mrs. Rothenhofer's lot containing one-half acre more or less; situated in the city of Greenville, county and State aforesaid, together with all and singular the hereditaments and appurtenances thereunto belonging to have and to hold the aforegranted premises unto the said Elizabeth Kelly, her heirs and assigns, as against myself, my heirs and assigns, and against all persons claiming or to claim the same by or through me in any manner whatever ; but reserving unto myself the use, occupation and enjoyment and control of the same for and during the term of my natural life and I am to retain the possession of this conveyance during the term of my natural life ; then this conveyance to be delivered to the said Elizabeth Kelly. In witness whereof I hereunto set my hand and seal, this 21st day of June, 1887.

J. T. Perry     (Seal.)

In presence    ⎫
S. J. Bolling,    ⎬
J. M. Carroll."    ⎭

It is most clear that this instrument is inoperative as a deed.   It conveyed no estate in possession or in title during the life of Perry.   He was not only to retain "the use occupation, enjoyment and control" of the land for the term of his natural life, but by the express terms of the paper there was to and could be no delivery of the instrument, in escrow or otherwise, until after his death, and, in legal contemplation, posthumous delivery is no delivery at all. *Richardson v. Woodstock Iron Co.*, 90 Ala. 266.   On this state of case, the instrument is void as a deed but if, as seems probable, it was executed with the formalities requisite to a will, it may when proved as a codicil to the will, operate as a testamentary disposition of the house and lot described in it to Mrs. Kelley.—*Crocker v. Smith*, 94 Ala. 295; *Trawick v. Davis*, 85 Ala. 342; *Kyle v. Perdue*, 87 Ala. 423.

Putting the codicil first considered in the stead of the second clause of the will and adding to the will this paper of June 21, 1887, as a codicil thereto, which we will assume for the purpose of this opinion has been probated as such, it is now to be considered what is the character of its several bequests and devises in respect of the first being specific, demonstrative or general, and of the second—devises—being specific or general, with a view to determining in what order they shall be abated or adeemed through contribu-

[Kelly v. Richardson, Ex'r, &c.]

tion to the payment of the debts of the estate and the expenses of its administration. The principles of law in this connection are plain and familiar for the most part, and, in the main, of easy application to this case. "A specific legacy is a bequest of a particular article or specific part of the testator's estate which is so described and distinguished from all other articles or parts of the same as to be capable of being identified." "A demonstrative legacy is a bequest of money or other fungible goods, charged upon a particular fund in such way as not to amount to a gift of the corpus of the fund, or to evince an intention to relieve the general estate from liability in case the fund fail, and so described as to be undistingiushable from other things of the same kind." "A general legacy is a bequest chargeable upon the general estate, and not so given as to be distinguishable from other parts of the estate of the same kind," or, as otherwise defined "a general legacy is one of *quantity* merely, and includes all legacies not embraced within the definitions of specific and demonstrative legacies." 13 Am. & Eng. Encyc. of Law pp. 10 *et seq.* and notes ; 1 Brick. Dig. pp. 594-5 § 127 *et seq.; Myer's Extr's v. Myers,* 33 Ala. 85 ; *Harper v. Bibb,* 47 Ala, 547; *Maybury et al. v. Grady et al.;* 67 Ala. 147.

A bequest of all the testator's personal estate is a general bequest, nor is its character in this regard changed by the fact that a specific part is excepted out of the general bequest and given to another. 13 Am. & Eng. Encyc. of Law pp. 23-5 notes;. *In re Ovey* L. R. 20 Ch. D. 676.

Under these definitions, the bequest of personalty in gross to Mahala J. Rothenhofer and the pecuniary bequests to Mesdames Kelley, Carroll and Fulmore are general legacies, and the bequest to J. M. Carroll of certain merchandise and other property pertaining and belonging to the mercantile business carried on by the testator in his life time is a specific legacy. No demonstrative legacy is given by the will.

As to the character of the devises contained in the will. At common law all devises of land, whether given by particular description or residuary clauses, were specific. The soundness of this doctrine, its logical correctness, is manifest when reference is had to that rule of the common law by which wills were held to speak as of the date of their execution and to embrace only such property as then belonged to the testator and was within the terms of the testament. Under that rule, as has been well said, "a devise of lands operated in the nature of an appointment upon the land

held by the testator at the time of its execution, hence whether the land devised was described specifically or only by way of residue, for practical purposes, it was equally well ascertained," since the residue then held by the testator was as capable of identification and was already indeed as fully identified in his mind and intention as the part segregated therefrom by particular description, he being held to know what property he is seized of. And therefore the doctrine we have stated, that even residuary devises are specific because it is to be assumed the testator had the residue of the land then held by him in his mind and to have intended it to go to the residuary devisee as specifically as he had intended the lands particularly described to go to other devisees. Some modification of this. doctrine has been admitted in American courts in view of statutory provisions which have the effect of making wills speak from the death of the testator instead of from their execution. Our statute on the subject is the following : "Every devise made by a testator, in express terms, of all his real estate, or in any other terms denoting his intention to devise all his real property must be construed to pass all the real estate he was entitled to devise at the time of his death." Code § 1948. Considering that testators could not have had property acquired after the execution of their wills in their minds at that time, and that it is only by force of statute and wholly apart from the testator's intent that such property passes at all, and hence that they could not and did not specifically intend that residuary devisees should take such property, ·the tendency of American decisions has been, though the rule is different under similar statutory provisions in England, to hold that no devise of after acquired real estate is specific unless the land is described with sufficient particularity to enable the devisee to identify it.—*Farnum v. Bascom,* 122 Mass. 282; *In re Woodworth's Estate,* 31 Cal. 595; 13 Am. & Eng. Ency. of Law p. 27, note. This modification has never been considered in Alabama. No case has arisen involving the character of a devise of after acquired land in this respect, but, while the general doctrine that devises are specific has been adjudged by this court, nothing that has been said is opposed to the limitation of it to property held by the testator at the time of executing the will and property the acquisition of which was then in contemplation and which is so described in the will as to enable the devisee to identify it.—*Maybury et al. v. Grady et al.* 67 Ala. 147, 153, citing *Wallace v. Wallace,* 23 N. H. 149, and 2 L'd'g. Cas. in Eq. Pl. 1. pp. 323 *et seq.* There be-

ing nothing in our own adjudications to the contrary, and conceiving the modification to be sound in principle, we adopt it, and hold in so far as wills pass real property acquired after execution the devises are general and not specific unless such after acquired property is so described as to admit of its identification by the devisees.—2 Wagner Administrations p. 967; 3 Redf. on Wills, 367, n. (36); 4 Kent. Com. 541 n. (1).

Applying the foregoing principles to the will before us the result is to declare that each of the devises it contains *including the residuary devise to Herman Perry Dohrmeier* and, of course, the devise by codicil to Mrs. Kelly, is a specific devise, with this possible qualification in respect of said residuary devise: If any part of the land covered thereby was acquired by the testator after the execution of the will, to the extent of such land and in respect of it only the devise is general, such after acquired land, if any there was, not being described in the instrument.

Coming now to consider the order in which the legacies and devises of this will are to be abated or adeemed by contribution to the debts of the estate and expenses of its administration, it is first to be observed that by the special terms of the codicil the indebtedness incident to the testator's mercantile business is charged upon the specific legacy of the stock of goods, etc., etc., bequeathed to J. M. Carroll. If this property suffices to pay this indebtedness with a balance of property remaining, the question is whether such balance is subject to the general indebtedness of the estate along with other legacies of its class. We think it would be. This property in the first place was subject to the general debts of the estate, including the liabilities incurred in the mercantile business. And the general rule is that expressly subjecting property "to certain charges to which it was before liable does not exempt it from its primary liability for other debts not so expressly imposed upon it, upon the principle of *expressio unius est exclusio alterius.*" The contrary intent of the testator must be plainly manifested before a different conclusion is authorized.—*Brydyes v. Phillips,* 6 Ves. 567; *Davies v. Ashford,* 15 Simons, 42. We find no expression or clear indices of any other intent on the part of the testator than a purpose to *specially charge* the legacy to Carroll with the mercantile debts: there is indeed no intimation and scarcely room for persuasive inference that he had any purpose *to exempt* this property at all from the burdens of his estate further than the law implies from the specific terms in which the legacy is given, the effect of

which has relation solely to the order in which it may be subjected to general debts. And we accordingly hold that if the store debts are paid by Carroll or out of this property he holds the remnant of it subject to the other debts and to the expenses of administration as a special legacy is subject thereto. On the other hand, if this property is exhausted without full payment of the mercantile indebtedness the unpaid balance of course is to be paid like other debts out of the general property of the estate.

It is the policy of our laws that both real and personal property are equally liable for the debts of decedent's, and that realty devised and personalty bequeathed shall, where the devise and legacy are of the same character, abate ratably when there is a failure of assets undisposed of by the will to pay debts. It is in keeping with this policy that the rule by which *specific* legacies and *specific* devises are abated ratably by the necessities of contributions to the debts of the estate has come to be established. It follows logically from this policy and this rule in respect to specific dispositions of realty and personalty respectively that *general* devises shall contribute ratably with *general* legacies to debts and expenses of administration, and we so hold. That specific devises and specific legacies abate *pro rata* when there is necessity for either to contribute to debts is a proposition sustained by the weight of authority and reason and which has been expressly announced by this court. 13 Amer. & Eng. Encyc. of Law, pp. 130 *et seq*, and notes; 2 L'd'g. Cas. in Eq. Pl. 1, p. 325 *et seq*; *Maybury et al. v. Grady et al.*, 67 Ala. 147; 1 Roper on Legacies, 358.

As we have seen, there is no residuary bequest in this will. There are general legacies—of "all my personal property," with a certain exception, to Mrs. Rothenhoffer, and five hundred dollars in money to Mesdames Fulmore, Carroll and Kelly severally. There may also be, as we have pointed out, a general devise of after acquired land to Herman Perry Dohrmeier. Beyond these, the remaining legacy —that to J. M. Carroll—and all of the devises are specific. The order of abatement is this: The personalty bequeathed to Mrs. Rothenhoffer, the pecuniary legacies of five hundred dollars each and the land acquired after the execution of the will and embraced in the residuary devise to Herman Dohrmeier, if any such land is embraced therein, must first, after exhausting assets undisposed of by the will, be taken and made to contribute ratably, that is in proportion to respective values, to the liabilities of the estate. If through the full abatement of these general legacies, and this general

devise, if any, the liabilities of the estate are not satisfied, the specific legacy to Carroll and each of the specific devises, of which land held at the time of executing the will and embraced in the residuary clause to Herman constitutes one, shall in like manner be made to contribute *pari passu* to the debts and expenses of administration, and, to the extent of their respective contributions, be abated.

If the paper of June 21, 1887, can not be or is not probated as a codicil to the will the land embraced in it will necessarily go in specific devise to Herman Dohrmeier and in his hands be subject with other specific devises and the specific legacies to abatement (*ad valorem*) by contribution to debts, &c.

The inquiry as to the source from which the pecuniary legacies are to be derived involves a question of some embarrassment.   Clearly these legacies are not charged upon the realty.   Clearly also it was the purpose of the testator that they should be paid, and if this intent is to be effectuated it must be out of the personalty of the estate.   Yet the terms of the bequest to Mrs. Rothenhoffer are sufficiently broad, standing by themselves, to pass to her all of the personalty, including money in hand, belonging to the testator, except that covered by the bequest to Carroll; and we know of no rule of law which authorizes the payment of one general legacy by the abatement of another general legacy, or of a specific legacy.   So that if the bequest to Mrs. Rothenhoffer is given the broad effect its language admits of, there is no property upon which the pecuniary legacies can be charged and no fund, even leaving debts out of view, out of which they could be paid; and the intention of the testator as to these legacies would be utterly defeated by his own will as expressed in another part of the instrument, clearly expressing also this intention.   He, as we have said, is holden to a knowledge of the condition of his estate, and it is also to be conclusively presumed that he intended the benefits he has declared to each and all of the legatees named in his will.   It appears that both at the time of executing the will and at the time of his death he had very considerable tangible personal property as well realty and that he also had money on deposit in bank (as at the first date) or in his private depository (as when he died.)   If he bequeathed this money in part to Mrs. Rothenhoffer generally and in other part to Carroll specifically, he must have known that his beneficent purposes with respect to his sisters, Mrs. Kelly and Mrs. Fulmore, and his sister-in-law, Mrs. Carroll would be entirely thwarted.

To hold that he so intended would be to convict him of the
most puerile and absurd trifling with these natural objects
of his bounty. A construction of the instrument which will
avoid such a conclusion and leave a field for the effectuation
of all his testamentary purposes, so far as the exigencies of
his estate will admit of, ought to be adopted if the language
he has employed is susceptible of it. We think it is and
that the desired result may well be reached by construing
the bequest to Mrs. Rothenhoffer to cover and pass only that
part of his tangible personal property, not excepted to Car-
roll, exclusive of money in hand, and by construing the be-
quest to Carroll not to embrace money in the safe in the
store. Under all the circumstances these interpretations
appear to us reasonable and we adopt them. This view is
especially forceful in respect of the bequest to Carroll since
it is entirely improbable that the testator, if he had intended
the considerable sum of money then in the store safe to
pass—and the will in this particular was executed just be-
fore his death—would have omitted it from the enumeration
of various items of property in the store and given to Car-
roll or have supposed he was carrying it by the general
phrase "and everything belonging in said store." We hold,
therefore, that as to all money belonging to J. T. Perry at
that time he died intestate, and that the pecuniary legacies
were payable out of these funds, not of course as demonstra-
tive legacies, but as undisposed of assets of the estate.
And in so far as such assets together with the tangible
property bequeathed generally to Mrs. Rothenhoffer were
insufficient to pay the liabilities of the estate and all the
general legacies in full, such legacies, that is the value of the
personalty bequeathed to Mrs. Rothenhoffer and these pecu-
niary legacies, must abate *pro rata*.

In reference to the executor's rights and duties under the
contract between J. M. Carroll and Mrs. Kelly, it will suffice
here to say that if at any time he has in his hands money
going to Carroll out of the estate and as an incident merely
of the administration he would, in our opinion, be authoriz-
ed to pay it to the extent of fifteen hundred and fifty dollars
to Mrs. Kelly, but he is under no duty or obligation and has
no power or authority to convert the property, personal or
real, specifically bequeathed or devised to Carroll, into
money for the purpose of paying the latter's contract debt
to Mrs. Kelly, or into any property so bequeathed or
devised to Mrs. Kelly in specie. It may not be out of
place to say further in respect of the rights *inter se* of
Mrs. Kelly and Carroll, under their agreements, that the

[Kelly v. Richardson, Ex'r, &c.]

land described in the separate paper which was supposed to be a deed from Perry to Mrs. Kelly and which we have held must operate as a codicil to Perry's will, if it can be and is probated as such, is not within the terms of said agreements and will not pass to Carroll thereunder although thereby Mrs. Kelly released and assigned to him all her interests as devisee and legatee under the will. It was not supposed that this land constituted a devise and it was clearly not in the contemplation of the parties in entering into this contract.

We have no fault to find with the chancellor's decretal order as to the surrender of devises to the devisees. The case made by the petition to that end, the answer of the executor and the facts adduced justified the action taken, and the surrender or delivery of possession to the devisees is so conditioned and so limited by the terms of the order that no possible detriment can result to the estate, the creditors or the executor.

We have discussed several matters which, though involved in the case as submitted to the chancellor, were not adjudicated by him. This we have done in the hope of expediting the administration and settlement of the estate.

In several of the matters adjudged by the chancellor and presented by the appeal of J. C. Richardson, executor, &c., we have reached conclusions different from those declared by the decree below. On the appeal of Richardson, therefore, that decree must be reversed, and the cause will be remanded, costs of appeal, including all cost of transcript, to be paid out of the assets of the estate.

Neither Mrs. Kelly nor J. M. Carroll, take anything by their cross-appeals, and they will respectively be taxed with the costs thereof, except cost of making transcript.

No appeal was taken by Herman Dohrmeier, and the assignments of error made by him are stricken out. The questions sought to be presented thereby, however, have been passed upon on the appeal of the executor.

Reversed and remanded.