# Thompson *v.* Bank of Tuskegee, et al.

Bill to Enforce Payment of Monthly Annuity.

(Decided February 1, 1917.  74 South. 37.)

1. **Wills; Construction; Annuity; Lien on Real Estate.**—Where a testator provides by codicil for payment of an annuity without designating property out of which it shall be paid, the will providing that life insurance, etc., be invested in real estate, and it appearing that personal property is insufficient to meet annuity, real estate, title to which is in name of testator, as well as personal property, is subject to annuity; annuities being chargeable upon real estate if intention to so charge can be fairly gathered from all provisions of will and surrounding circumstances.

2. **Wills; Property of Corporation; Power to Devise.**—A testator, although he owns all but one or two shares of stock in a corporation, cannot by will provide for payment of an annuity out of lands standing in name of corporation; he and corporation being separate entities, and shares of stock alone being subject to testamentary disposition.

3. **Wills; Agreement to Pay Annuity; Operation and Effect.**—An agreement by two heirs in the division of real estate acquired under a will that one should assume a life annuity provided for mother of deceased by codicil, and a later release by the mother of property of the one not assuming annuity from liability therefor, is effective as to his property, but does not release property acquired by the other; he not having signed agreement by mother nor personally assumed the obligation.

APPEAL from Macon Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by Mary W. Thompson against the Bank of Tuskegee and others to enforce the payment of a monthly annuity upon real estate left by the testator. Decree sustaining demurrer to the bill, and plaintiff appeals. Affirmed in part, and in part reversed and remanded.

The averments of the bill, stated briefly, are that Charles W. Thompson, the son of oratrix, died in Macon county, Ala., on March 20, 1904, leaving a last will and testament, and a codicil, which will was duly admitted to probate, and W. W. Thompson and J. O. Thompson are named as executors and qualified as such, and also engaged in the performance of the trust imposed by the terms of the will and the codicil, while the other persons named as trustees never qualified or acted thereunder; that by the terms of the codicil to the last will and testament of said C. W. Thompson, oratrix was bequeathed an annuity of $150 per month, to be paid on the first day of each month by the executors and trustees, and to continue during the natural life of oratrix, but that by a decree of the chancery court entered on June 20, 1906, said annuity was reduced to $100 per month; that the trustees and executors of said last will and testament of said C. W. Thompson made a final settlement of their administration, and on August 14, 1906, the probate court of Macon county made and entered a final decree passing the accounts and vouchers of the said executors and trustees, and directing that they turn over and surrender to Ernest W. Thompson and Charles W. Thompson, Jr., the beneficiaries named in the said last will and testament, and the only heirs at law of said Charles W. Thompson, all of the real and personal estate of the said C. W. Thompson on hand and undisposed of, but subject to the charge of the life annuity in favor of your orator as provided in said will and codicil. During all the time that the trustees and executors administered the estate of said C. W. Thompson they paid your oratrix said annuity, and after said E. W. and C. W. Thompson,

Jr., were surrendered the real and personal property of the estate of said Charles W. Thompson by said executors, they continued to pay your orator said annuity until about the month of January 1, 1916, when they failed and ceased to pay said annuity, and your orator is now and has been ever since the last payment made to her without said annuity, and she is in dire need thereof for maintenance and support.

Oratrix avers that at the time of the death of said C. W. Thompson, he was the owner and in possession of quite a large amount of real and personal property situated in Macon county, Ala., and at the time was the owner of all the stock of a corporation known as the Tuskegee Land & Security Company, except one or two shares, and these shares were held by others for the benefit of said Thompson; that said Tuskegee Land & Security Company had and owned at said time a large quantity of land in Macon county; that after the death of said Thompson, the trustees and executors under his will treated and considered all of the assets of said Tuskegee Land & Security Company as the property of said Charles W. Thompson, and in the execution of the trust imposed by the will instead of selling and disposing of the stock in said corporation, and investing the money in real estate, as directed by the will, treated the real estate in the name of said corporation as realty of the estate of said Thompson, and upon the final decree and settlement surrendered to said E. W. and C. W. Thompson, Jr., all of the real estate standing in the name of the Tuskegee Land & Security Company, together with the other real estate owned and possessed by said Thompson. Oratrix further shows that said E. W. and C. W. Thompson, Jr., had disposed of, or permitted to be disposed of, all of the property surrendered to them by said executors of said last will and testament of said Charles W. Thompson, and neither the said E. W. nor the said C. W., Jr., have any assets out of which oratrix could collect or enforce the payment of the annuity to which she is entitled. Oratrix further shows that at the time of the disposition of some of the property belonging to the estate of said C. W. Thompson, and which was subject to the payment of the annuity in her favor, she relinquished and released to the purchaser her right to an annuity therein, but she avers that the following described real estate now owned and possessed by the different persons, and the corporations mentioned, is still subject to the payment of the annuity. (Here follows description of cer-

tain property now owned by J. H. Thompson; other property owned by D. E. Laslie and the Bank of Tuskegee; other property owned by Walter Breedlove and W. E. Huddleston; other property now owned by F. M. Johnston; other property now owned by E. W. Thompson; other property now owned by W. W. Thompson, and other property owned by other individuals who are not made parties.)

Oratrix avers that of the real estate herein described, the title to the following described parcels thereof stood in the name of said C. W. Thompson at the time of his death. (Here follows description.) Oratrix further avers that of the real estate hereinabove particularly described, the title to all the remaining parcels other than those as just averred as standing in the name of said C. W. Thompson at the time of his death stood at that time in the name of Tuskegee Land & Security Company, all of which property, being treated by the trustees and executors as real estate. It is then averred that the executors and trustees exhausted all of the personal property in the payment of the debts of the estate of said Charles W. Thompson, and the only personal property remaining in their hands at the time of the final decree discharging them was the sum of $521.66, and the interest held and owned by said Thompson in the Tuskegee Land & Security Company. It is averred and shown that the several pieces of property described are subject to the payment of annuity in her favor of $100 per month during her natural life. By an amendment it was shown that by mutual agreement and the passing of deeds E. W. and C. W. Thompson, Jr., divided the estate, each receiving his part, and that by the agreement, E. W. Thompson assumed all unpaid indebtedness against such estate, consisting of mortgages, and also be assumed the life annuity of $100 per month, payable to your oratrix, it being understood that oratrix would release all of the property received in the division of said estate by said C. W. Thompson, Jr., from liability for the payment of her said life annuity, and in pursuance thereto she entered into writing releasing said property. Other amendments were made to the bill showing that at the time the various persons acquired title to the realty which stood in the name of the Tuskegee Land & Security Company, they severally had notice or knowledge that the real estate acquired by them had been treated as a part of the estate of C. W. Thompson, as real estate, and that in the division between the beneficiaries, such estate had

been treated as real estate. It is further alleged that the title acquired by Laslie and the Bank of Tuskegee was acquired by the foreclosure sale under the mortgage, and that the auctioneer crying the sale, and that the agent of oratrix who was present at the sale, each gave notice that the sale was subject to the payment of the annuity, which was monthly to be paid to oratrix.

The codicil referred to is as follows:

Having heretofore executed a will disposing of my worldly estate, I hereby desire to add the following codicil: First, it is my will and desire that my beloved mother, Mary W. Thompson, shall receive out of my estate an annuity of $150 per month, to be paid to her on the first day of each month; that is to say, that the amount I now allow her for her support and maintenance may be increased to the sum of $150 per month to be paid to her by my executors named in my will, as a monthly annuity during the term of her natural life.

STEINER, CRUM & WEIL for appellant. H. P. MERRITT, A. B. PAINE, W. P. COBB and R. H. POWELL for appellees.

ANDERSON, C. J.—(1) The general rule is that pecuniary legacies are not chargeable upon lands unless the intention to so charge them is manifested by express words or by fair implication.—*Taylor v. Harwell,* 65 Ala. 1; *Newsom v. Thornton,* 82 Ala. 402, 8 South. 261, 60 Am. Rep. 743. Legacies may be charged upon real estate without express direction, if the intention of the testator so to do can be fairly gathered from all the provisions of the will; and extraneous circumstances may be considered in aid of the terms of the will.—*Hoyt v. Hoyt,* 85 N. Y. 142; *Jackson v. Billinger,* 18 Johns. (N. Y.) 368; *Gorman v. McDonnell,* 127 Ala. 549, 28 South. 964. While it is true that ordinarily lands are not chargeable with the payment of general pecuniary legacies, still this rule is not one of universal application, and is not so unbending as it will not yield to another rule of equal dignity and force which allows a testator to blend or mix his realty and personalty in the creation of a source or fund for the payment of his general pecuniary legacies.—*Carter v. Balfour,* 19 Ala. 814; *Maybury v. Grady,* 67 Ala. 147. The legacy to this complainant consisted of an annuity to be paid during her life, and while the payment of same was not made an express charge upon the testator's land, no provision was made for the

payment of same out of the personalty. It was just provided for generally, and the testator not only contemplated a blending of the personalty and real estate, in so far as this annuity was concerned, but specifically required that his personalty, that is, life insurance, etc., be invested in real estate after the payment of his debts. The bill shows that there was little or no personal property left after the payment of debts, and it was evident that the testator did not intend to provide his mother with an annuity and at the same time confine its payment from a source which he knew would be inadequate to meet same. It may be that the holdings in the Tuskegee Land Company should have been treated as personalty by the executors instead of as realty, but there is nothing to indicate that the testator intended that the annuity provided for his mother should be paid entirely from the stock held by him in said land company. On the other hand, if the testator supposed that his holdings in said land company were to be regarded as land instead of personal property, this is a strong circumstance tending to show that the annuity should be a charge upon his estate generally, including the land, as he was bound to know that it was a continuous charge and that his personalty exclusive of the stock in the land company was greatly inadequate to meet said annuity. We therefore hold that the complainant's annuity was a charge and lien upon all property owned by the testator C. W. Thompson at the time of his death, subject to the payment of his debts and the cash legacies provided by said will. This is not only true, but this seems to be the construction placed upon same by the parties in the settlement of the chancery case between this complainant and the children of the testator, wherein the annuity was reduced from $1,800 to $1,200. We therefore hold that the chancery court erred in holding that the bill was without equity, upon the idea that there could be no charge upon the land without averment and proof that there was not sufficient personal property to provide for the payment of the annuity of this complainant.

(2) We are of the opinion, however, that the complainant has no lien on the lands which stood in the name of the corporation land company. It may be true that the testator owned practically all stock in said company, but he and it were separate entities, and the will operated to dispose of the testator's stock, instead of the property of the corporation, and those of the respondents who purchased lands belonging to the land company

got the same free from any lien or claim that the complainant may have had upon the estate of Chas. W. Thompson for her annuity. Moreover, if this was not the case, those of the respondents who purchased any of the land at mortgage sale under mortgage given by the land company acquired the protection accorded the mortgagee, regardless of any notice that may have been given at the sale as to the complainant's claim of a lien upon same.

(3) The agreement executed by the complainant on the 16th day of September, 1908, did not operate to establish or enlarge a lien, as it was not signed by E. W. Thompson, but was intended as a mere release or waiver of any claim or lien that she had to any property received by C. W. Thompson, and that she was to look solely to the property then held by E. W. Thompson under the division with his brother, but which excluded lands in the name of the land company. In other words, this agreement operated to narrow, rather than extend, the complainant's lien so as to confine it to so much of the property then acquired by E. W. Thompson upon the division with his brother as was previously subject to her annuity and to release her claim as to all other property. Neither of the Thompsons (sons) was personally liable for this annuity, as it was a mere charge upon the property left by the testator, and we do not think that the instrument of September 16, 1908, was intended to release the lien upon the property and to look only to E. W. Thompson personally for the payment of the annuity, as the instrument negatives all idea of a release of her lien upon the property allotted to E. W. Thompson. We therefore hold that all property acquired by E. W. Thompson under the division with his brother and the title to which stood in the name of the testator at the time of his death is subject to the complainant's claim, and the bill is not wanting in equity in so far as it seeks to subject it to the payment of the complainant's annuity. The bill, however, is without equity in so far as it seeks to fasten a lien upon any lands held by those respondents that belonged to the land company at the time of the testator's death, or which they may have purchased from C. W. Thompson, Jr., or E. W. Thompson prior to September 16, 1908, and as to these, their demurrer to the bill was properly sustained. The bill does contain equity, however, as to those respondents who hold the property under conveyances from E. W. Thompson subsequent to September 16, 1908,

[Pennington v. Mixon.]

and the title to which stood in the name of the testator at the time of his death as distinguished from the land company.

Affirmed in part, and reversed and remanded, with no cost to respondents of the first class, and cost of this appeal to be equally divided between the appellant, one half, and the other half between the respondents of the second class.

Affirmed in part and reversed and remanded.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.