174 So. 634

HAMMOND v. BIBB et al.

7 Div. 442.

Supreme Court of Alabama.

May 20, 1937.

193

Ross Blackmon, of Anniston, for appellant.

Mulkey & Mulkey, of Geneva, amici curiæ.

Roy M. Woolf, of Anniston, for appellees.

FOSTER, Justice.

This is a bill in equity, and is evidently supplementary to an administration, in that court, of the estate of L. H. Kaplan, deceased, who died testate. The purpose of the bill is to collect a certain annuity provided in the will for C. H. Tomlinson during his life. While he was dead when the bill was filed, the amount claimed was for annuities which had accrued at and before he died.

A construction of the will is necessary to determine the rights of complainant as sought in the bill. It is attached to the bill, and provides for the payment to Tomlinson of $50 per month during his life. It contains provision for a similar annuity to Robert Kaplan, son of testator, who, having been made a party defendant, has filed a bill in the form of an intervention in this suit but no question is here presented as to his rights.

In so far as shown by the bill and the express terms of the will, there were three pieces of real estate owned by testator. No others are mentioned, nor is other property mentioned, although there is some implication in the will that he owned other property. One piece of land was situated in Asia, and was specially bequeathed to his brother-in-law, there residing, and is not here considered of importance.

The other items of property specially mentioned are what we will refer to as lots 129 and 130 in Anniston, not intending here to describe them except for the purposes of this opinion. With respect to lot 129, he provided in paragraph 8 of his will that "in the event my son (that is Robert Kaplan) contracts a marriage with a jewess, I devise to his children (this lot). This property to be held in trust by my executor and trustees until my said son, Robert, shall have born unto him a child which shall attain the age of twenty-one years: upon his twenty-first birthday the said property is to be divided equally among all children of said Robert, who shall then be living."

In the ninth paragraph he devises lot No. 130 to his trustees for certain charitable trusts. See, State ex rel. v. Bibb (Ala.Sup.) 173 So. 74;[1] National Jewish

[1] Ante, p. 46.

Hospital v. Coleman, 191 Ala. 150, 67 So. 699; Kaplan v. Coleman, 180 Ala. 267, 60 So. 885. In the tenth paragraph he "leaves in trust" for the same charities all the rest, residue, and remainder of his property.

In the eleventh paragraph he reiterates the trust, excluding the lot in Asia. In it also he directs his trustees to "pay said monthly sums above mentioned out of income of my property or buy annuities, as they may deem desirable. Until such time as my said son may have a child who reaches twenty-one years of age, and until the twenty-first year of its life, the money from the block South of Eighth Street, block 129, is to go to the general income fund of my estate, and to be applied to the purposes of my said will above outlined, just as the income from other portions of my property. The annuities above bequeathed are not to be charged on any specific portion of my estate, but on the whole thereof, except the said block 130, the income from which is to be used for the three charities aforementioned." And then it is provided that, if any devise fails, the remainder is to go to the same charities.

The bill first seeks to hold the trustee accountable for the rents collected from lot 129, and, in event there is not enough to pay the annuities, it seeks to subject the corpus of that lot. It alleges that respondents Agee and associates (named) have acquired the interest of two of the charities in said lot 129. It does not allege whether Robert married a Jewess or has a child. And the intervention of Robert does not give us a sidelight on that subject.

The court sustained demurrer of Agee and associates, and overruled demurrer of the trustee. The decree shows that the court was of the opinion that the bill has equity in so far as it seeks to require the trustee to account for the sums he has collected, but that the annuities are not a charge upon the corpus of lot 129.

Ground 18 of the demurrer of Agee and associates is that the bill does not show that Robert did not marry a Jewess, and has no child, and, from aught that appears, there is such a child who is a necessary party. It is urged that there is a presumption of a continuance of the single form of his life. The court will indulge presumptions in favor of complainant upon a general demurrer for want of equity, but not when a demurrer specially points out a failure of averment in some particular. If Robert married a Jewess, and has a child, that child is a necessary party. It is singular that neither the bill nor the intervention of Robert makes allegation in that respect.

A chancery court must have before it the owners of the entire title to property, legal and equitable, which is sought to be sold or subjected by its decree, and will not proceed without them. Silverstein v. First National Bank, 231 Ala. 565, 165 So. 827 (5); Hodge v. Joy, 207 Ala. 198, 92 So. 171; Ex parte Wilkinson, 220 Ala. 529 (20), 126 So. 102.

It cannot be said, therefore, that there is error in the decree sustaining the demurrer. But we think we should consider the merits of the controversy, so carefully argued in brief and at the bar. This we will proceed to do.

The question argued by appellant relates to a construction of the will so as to determine whether the corpus of lot 129 may be subjected to the legacy bequeathed to complainant to the extent that the income derived from the estate subject to pay it is not sufficient to that end. It is specified that lot 129 is to be held in trust until his "son Robert shall have born unto him a child which shall attain the age of twenty-one years," and until that time "the money from (it) is to go to the general income fund of my estate, and to be applied to the purposes of my said will above outlined just as the income from other portions of my property." Neither the bill nor the will shows that there was any other property which yielded an income. But the will provided that the trustees shall pay "said monthly sums above mentioned out of income of my property or buy annuities," and that the legacies above bequeathed are made a charge on the whole of his estate except lot 130. Does that indicate an intention to charge the corpus of lot 129, when construed in the light of the balance of the will?

Speaking with reference to debts, not legacies, our statute makes the realty of a decedent subject to their payment when the personalty is not sufficient. Section 5847. And such liability is not affected by a specific devise of the property. May v. Burns, 222 Ala. 68, 131 So. 232; Cater v. Howard, 230 Ala. 133, 159 So. 830; Kelly v. Richardson, 100 Ala. 584, 585, 13 So. 785.

But the property, both real and personal, not specially devised shall be ex-

hausted before resort is made to that which is so devised. Morgan v. Watkins, 214 Ala. 671, 108 So. 561; Lightfoot v. Lightfoot's Ex'r, 27 Ala. 351.

"A specific legacy is a bequest of a particular article or specific part of the testator's estate, which is so described and distinguished from all other articles or parts of the same as to be capable of being identified." Kelly v. Richardson, 100 Ala. 584, 596, 13 So. 785, 790; May v. Burns, 222 Ala. 68, 131 So. 232; Willis v. Barrow, 218 Ala. 549, 119 So. 678.

A bequest of a certain sum of money is general, and not special. Kelly v. Richardson, supra; Lightfoot v. Lightfoot's Ex'r, supra.

The rule in respect to the payment of general legacies is different from that applicable to the payment of debts. It is said in Kelly v. Richardson, supra, 100 Ala. 584, at page 600, 13 So. 785, 792: "We know of no rule of law which authorizes the payment of one general legacy by the abatement of another general legacy or of a specific legacy." And the general rule is said to be that, "in the absence of an intention otherwise, land, or an interest therein specifically. devised, is not subject to a charge for the payment of legacies." 69 Corpus Juris, 1182; Pitts v. Campbell, 173 Ala. 604, 55 So. 500, 502; Gorman ·v. Mc-Donnell, 127 Ala. 549, 28 So. 964; Newsom v. Thornton, 82 Ala. 402, 8 So. 261, 60 Am.Rep. 743.

·But "the intention to charge the real estate may be expressed, or the charge may be created by fair and just implication. Whenever it appears satisfactorily that the devise was given on condition, or on the consideration that the devisee should pay the legacy, the land will be charged. The charge can not be implied, when it appears that the testator intended the legacy should be paid by the devisee from other gifts made to him, though such gifts from any cause may be insufficient for the payment, or may become insufficient from the fault of the devisee." Sistrunk v. Ware, 69 Ala. 273, 276; Mason v. Smith, 49 Ala. 71; 62 A.L.R. 596; Brown v. Grimes, 60 Ala. 647; 69 Corpus Juris, 1183, 1163, 1164, section 2482; 1171, section 2488; Thompson v. Bank of Tuskegee, 199 Ala. 67, 74 So. 37.

And a "bequest of an annuity is primarily payable out of the testator's personal estate, unless there is a clear intent to exonerate the personal property. Where, however, such appears to be the intention of the testator, as construed from the provisions of his will and the surrounding circumstances, an annuity may constitute a charge on the general estate of both real and personal property, as where no direction is given as to the fund or property out of which the annuity is to be paid and the personal property alone is insufficient for this purpose." 39 Corpus Juris, 1188.

The following is also quoted from that authority on page 1173: "The fact that the personal estate, at the time of the execution of the will, was sufficient to pay debts and legacies is a circumstance to show that the testator did not intend to charge the legacies on the real estate, and in fact raises a presumption against such a charge, particularly as to real estate which has been specifically devised; and the fact that the personalty subsequently fails or becomes deficient is generally immaterial as a ground for charging the legacies on the real estate; and, where, in such a case, certain legacies are to be paid in full, other legacies must be paid pro rata out of the remaining personalty which at the time of distribution is insufficient to pay them all in full. Resort may be had, however, to realty as being charged with the payment of legacies, on a deficiency of personalty, where it appears from the will as a whole, as construed in connection with surrounding circumstances, that the testator intended that a legacy should be paid, regardless of the sufficiency of personalty as the primary fund, although the personalty was sufficient at the time of the testator's death, but became deficient by acts of waste by the executor; or, where the real estate and personalty are blended in one mass, and legacies then bequeathed, the legacies become a charge on the real estate, if the personalty is insufficient."

And in Gorman v. McDonnell, supra, 127 Ala. 549, at page 555, 28 So. 964, 966, it is said: "The fact that the testator had no personalty, or not sufficient, to pay the pecuniary legacies, is of importance as tending to show that he must have intended their payment out of the realty." To the same· effect is Newsom v. Thornton, supra; Jackson v. Lane, 213 Ala. 344, 105 So. 223.

It thus becomes apparent that we should have information not disclosed by this bill in order that we may so interpret the intention of the testator as to show a liability of lot 129, as here sought to be decreed. It is specially devised on certain conditions, which are contingent so long as

Robert is capable of marrying a Jewess and fathering a child. If that contingency never occurs, then it will be taken pursuant to another clause. The will provides for payment out of income and authorizes the purchase of an annuity for that purpose. It nowhere in terms charges the corpus of lot 129.

If testator had when he executed the will sufficient personal property, which, with the income from lot 129, was reasonably thought to be sufficient to pay the legacies, it is fair to assume that he did not intend to charge the corpus of the property specially devised. Under those circumstances, his provision that they be charged on the whole of his estate, other than lot 130, may fairly be construed in respect to lot 129 to refer only to its income, since the income of lot 130 is not so charged, and the legacies are expressly made payable out of income. The fact that annuities may be purchased for that purpose indicates that he then thought he had sufficient property not specially devised, and the fact that the income from lot 129 was to go into a general income fund indicates that he supposed he had a substantial income from other sources. But these are only circumstances tending to show that he thought he had a sufficient amount of property to pay the legacies, which he calls annuities. If he had such property, it would be our construction of the will that he had no intention of charging the corpus of lot 129. The bill does not allege that he did not, when he made the will, own such other property sufficient in amount with the income from lot 129 to pay the general legacies.

 We indulge the presumption against the pleader on demurrer that he has stated his case as strongly as he could, and therefore that testator did own such other property since it is not denied. His will speaks from his death, but his intention is ascertained from his surroundings when he executed it. 69 Corpus Juris, 63; First National Bank v. Sheehan, 220 Ala. 524, 126 So. 409; Spencer v. Title G. L. & T. Co., 222 Ala. 485, 132 So. 730; 19 Alabama Dig., Wills, ⊚⇒441.

"A clear gift is not to be cut down by anything which does not, with reasonable certainty, indicate an intention to cut it down." Pitts v. Campbell, supra; Schowalter v. Schowalter, 221 Ala. 364, 128 So. 458; Orr v. Helms, 217 Ala. 603, 117 So. 61.

The will has internal evidence of an intention to make the legacies under consideration only payable out of income, and that there was other property than that specially mentioned in it. The fact that it also stated that the trustees could pay the legacies by the purchase of annuities which would probably require a capital outlay does not of itself show that testator supposed such outlay must come by a sale of lot 129, and that it did not otherwise then exist or was reasonably anticipated without using the corpus of that lot.

We are not willing to hold that the circuit court was in error in his construction of the will without the aid of other circumstances which clearly showed an intention to cut down the specific devise of lot 129. But such allegations may be made, if justified by the facts, and the court allowed an amendment, which we think was proper to enable him to do so. Complainant is allowed thirty days in which to amend the bill.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

